162 Ill. App.3d 815 (1987)
516 N.E.2d 860
In re APPLICATION OF JACK L. ANDERSON, County Treasurer and Ex-Officio County Collector of Lake County (Jack L. Anderson, County Treasurer and Ex-Officio County Collector, Petitioner-Appellee,
v.
Joseph J. Drobnick et al., Respondents-Appellants).
No. 2-86-0574.
Illinois Appellate Court  Second District.
Opinion filed November 24, 1987.
*816 *817 Mark J. Drobnick, of Waukegan, for appellant Jerome P. Drobnick.
*818 Neil F. Hartigan, Attorney General, of Springfield, and Fred L. Foreman, State's Attorney, of Waukegan (Mimi Brin, Assistant State's Attorney, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.
Judgment affirmed.
JUSTICE HOPF delivered the opinion of the court:
Respondents, Joseph J. Drobnick and Jerome P. Drobnick, appeal from the trial court's order finding them not entitled to a full refund of all monies paid under protest in redeeming more than 200 parcels of vacant land.
The respondents had failed to pay 1980 real estate taxes on the parcels in question, and the properties had been placed for sale, pursuant to an order for judgment and sale, at the Lake County tax delinquent property sale on December 14, 1981. On that date the County of Lake, as trustee, made its noncash bids on the properties. The county had a standing bid on those parcels which were not bid upon by any other tax buyer at the tax sale.
Subsequently, the county petitioned for an order directing the issuance of tax deeds based upon the purchases of the respondents' delinquent 1980 real estate taxes at the 1981 tax sale. Notices were served upon all known and unknown owners and all interested parties for each parcel the county had acquired. The notices were also published. Each owner, unknown owner, and interested party was advised that each parcel sold for delinquent 1980 taxes could be redeemed prior to the issuance of a tax deed to the county. The respondents filed a redemption under protest in December 1984, listing their reasons for the protest. To redeem the properties, the respondents paid the 1980 delinquent taxes as well as statutory interests, costs, and fees incurred for the tax delinquency. Additionally, they were required to pay the 1981 taxes, which had remained unpaid until the 1984 redemption, as well as the statutory interests on those taxes.
At a bench trial on the issues raised by the respondents in their redemption under protest, the court found that the county had fully complied with the provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 482 et seq.) (the Act) and that the county would have been entitled to tax deeds in the absence of the redemption under protest. Additionally, the court found constitutional the provisions of the Act complained of by the respondents. The court ordered the protest stricken from the redemptions and authorized the distribution of the redemption money.
The respondents' post-trial motion to vacate and set aside the *819 court's final order was denied. They appeal from the trial court's decision and its subsequent denial of their post-trial motion.
In this court the respondents contend: (1) that the penalty provisions of section 253 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 734) violate the due process clauses of both the United States Constitution and the Illinois Constitution; (2) that the advertisements and other notices issued for the sale of the tax delinquent properties were void and violated section 228 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 709); (3) that the county failed to comply with section 239 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 720) by not certifying the tax judgment, sale, redemption and forfeiture records; (4) that no certificates of purchase were issued to the county pursuant to the sale of the tax delinquent properties; (5) that the county's authority, as trustee, to make noncash bids on properties at tax sales is unconstitutional; (6) that the county improperly filed 238 separate petitions for tax deeds thereby causing respondents to incur extra costs at the time of the redemption; and (7) that the county failed to prove that the tax judgment amount was accurate or correct.
 1, 2 Respondents' first contention consists primarily of unsupported assertions. An appellant may not make a point merely by stating it without presenting arguments in support of it, and this court will not argue a case for an appellant. (Nicholl v. Scaletta (1982), 104 Ill. App.3d 642, 647, 432 N.E.2d 1267.) A court of review is entitled to have briefs submitted that are articulate, organized, and present cohesive legal argument in conformity with supreme court rules. (In re Marriage of Souleles (1982), 111 Ill. App.3d 865, 869, 444 N.E.2d 720.) Any issue which has not been adequately presented to this court for review may be deemed waived. (Williams v. Danley Lumber Co. (1984), 129 Ill. App.3d 325, 472 N.E.2d 586.) On the basis of the respondents' presentation of their first issue, we could justifiably consider it waived, especially in light of the fact that it is unclear exactly what they are contending. Nevertheless, we shall address what we believe to be the issue.
The respondents appear to be contending that the penalty provisions of section 253 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 734), dealing with the redemption of tax delinquent property, contravene the due process clauses of both the United States Constitution and the Illinois Constitution. Additionally, the respondents claim that these provisions violate Illinois criminal statutes and Illinois civil usury laws.
Respondents failed to pay 1980 real estate taxes for more than *820 200 parcels of vacant land. These parcels were subsequently sold in December 1981 at the Lake County tax delinquency property sale to the County of Lake, as trustee. The respondents' unpaid 1981 property taxes were posted to these sales. In order to prevent the county from obtaining tax deeds to these parcels, the respondents in December 1984 redeemed each parcel under protest, paying a 93% penalty on the 1980 unpaid taxes and a 36% penalty on the 1981 unpaid taxes. These penalties were computed pursuant to section 253 of the Revenue Act of 1939. Ill. Rev. Stat. 1983, ch. 120, par. 734.
 3, 4 The purpose of the sections of the Act providing for certificates of purchase and tax deeds is to encourage buyers at tax sales, to increase the collection of taxes, and to free land to reenter the stream of commerce and bear its share of the tax burden. (Bouhl v. Gross (1985), 133 Ill. App.3d 6, 11, 478 N.E.2d 620; City of Bloomington v. John Allan Co. (1974), 18 Ill. App.3d 569, 581, 310 N.E.2d 437.) A tax purchaser acquires through his certificate of purchase the right to be paid the price of the sale, interests, costs, and any other taxes, if there is redemption. 18 Ill. App.3d 569, 576, 310 N.E.2d 437.
 5 "Tax revenues are literally the lifeblood of government" (Rosewell v. Chicago Title & Trust Co. (1984), 99 Ill.2d 407, 416, 459 N.E.2d 966), and it has long been recognized that the legislature has the power to impose penalties for nonpayment of taxes. (People ex rel. Abbe v. Nash (1936), 364 Ill. 224, 234, 4 N.E.2d 101 (Shaw, J., dissenting).) In the instant case, respondents chose not to pay the 1980 and 1981 taxes on more than 200 parcels of property, an act which cost the county and the taxing districts needed revenue. Additionally, respondents chose not to redeem the parcels until 1984, thereby causing Lake County to expend time and money to get the parcels back on the productive tax rolls. Thus, respondents cannot now complain of the amount of the penalty rates they had to pay in redeeming their properties since the legislature had the right to create such rates and since the rates resulted from the respondents' own neglect and delay in paying their taxes when due. Having to redeem their properties from a tax sale purchaser at a penalty interest rate that was compounded by the length of time it took them to redeem was a result of respondents' own delinquency. Had respondents paid the property taxes when due, they would never have been put in the position of having to pay the penalty charges.
 6 We find respondents' assertion that the penalty provisions of section 253 of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 734) are in violation of the Illinois criminal statutes and the usury laws of Illinois *821 and the United States to be baseless. Like the petitioner, we are unaware of any civil usury laws in Illinois or in the United States which prohibit legislatively imposed penalties for redemption of tax delinquent real property. Moreover, the criminal usury statute respondents cite (Ill. Rev. Stat. 1983, ch. 38, par. 39-1) for their proposition that tax redemption penalties resemble "juice loans" is totally inapplicable to the case at bar, primarily because the relationship between the county and the respondents is not that of lender-lendee.
We conclude that the penalty rates charged respondents were not unreasonable and that section 253 of the Act, providing for such charges, is neither improper nor unconstitutional.
 7 In their second contention respondents appear to be arguing that the advertisements and other notices issued for the sale of the tax delinquent properties in question are void because the notices contained inadequate legal descriptions of the properties. It is respondents' argument that the county's use of permanent real estate index numbers (PINs) to describe the tax delinquent properties violated section 228 of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 709).
The pertinent portion of section 228 of the Act provides:
"In all advertisements for the sale of lands and lots for taxes or special assessments, and in entries required to be made by the clerk of the court or other officer, letters, figures and characters may be used to denote townships, ranges, sections, parts of sections, lots or blocks, or parts thereof, the year or the years for which the taxes were due, and the amount of taxes, special assessments, interest and costs." (Ill. Rev. Stat. 1983, ch. 120, par. 709.)
The statute specifically states that "letters, figures and characters may be used to denote townships, ranges, sections, parts of sections, lots or blocks, or parts thereof." (Ill. Rev. Stat. 1983, ch. 120, par. 709.) A PIN meets these requirements. Wayne Wasylko, supervisor of Lake County clerk's tax extension and redemption office and agent of Lake County, trustee, testified at trial that a PIN is "a shortened or a shorthand version of a legal description." It deals with a "specific legal description" and refers to only one property. Wasylko explained that the first two digits of the number refer to a parcel's township and range, the second two digits refer to the surveyor's section, the third set of three digits refer to the quarter section and whether or not it is within a platted subdivision, and the last two digits signify the parcel's individual identification number. Given Wasylko's testimony, it appears evident that a PIN satisfies the provisions of section 228.
*822 Moreover, other sections of the Act establish the use of a PIN for purposes of describing real estate. Section 30 of the Act reads in relevant part:
"The county clerk * * * in counties of less than 1,000,000 population may establish a real estate index number system pursuant to which real estate may be listed for purposes of assessment, collection of taxes or for the purposes of automating the office of the recorder. Such system may be adopted in addition to, or in lieu of, the method of listing by legal description * * *. The real estate index number system shall describe real estate by township, section, block, and parcel or lot, the street or post office address, if any, and street code number, if any, of such real estate." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 511.)
Section 1 of the Act provides:
"Legal Description  Proper Description  Description  As applied to real estate, not only the describing of real estate by reference to government surveys or by metes and bounds or, when subdivided into lots and blocks, by reference to duly recorded plats, but also the index number assigned to the particular real estate, when a real estate index number system has been established in accordance with section 30 of this Act, and such index number shall constitute a sufficient description of the real estate to which it has been assigned, wherever a description of the real estate is required under any Section of this Act." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 482(19).)
Additionally, as the petitioner points out, in section 241a (Ill. Rev. Stat. 1983, ch. 120, par. 722a), pertaining to redemption notices, section 253 (Ill. Rev. Stat. 1983, ch. 120, par. 734), pertaining to redemption under protest, and section 263 (Ill. Rev. Stat. 1983, ch. 120, par. 744), pertaining to redemption notices to owners, occupants, and interested parties, the legislature has provided that either a legal description or a PIN may be used.
Under the provisions of the aforementioned sections of the Act, we find that the use of permanent real estate index numbers in lieu of legal descriptions is specifically authorized by the Act. Therefore, the use of such numbers in the advertisements and other notices issued for the sale of respondents' tax delinquent properties constituted sufficient notice to them that their property taxes were in default.
 8 Also, respondents' assertion regarding the inability to locate *823 property by only a PIN was dispelled by testimony at trial, some of which was presented by their own witnesses. Respondents' witness, Edward Salesnick, former superintendent of the Lake County map department, testified that he could locate a particular property by using a current PIN and a map department map. Another witness for the respondents, Frank Nustra, Lake County recorder, testified that he would not purchase a tax deed without checking the PIN to confirm that the property deeded was the property he intended to purchase. Further, Wayne Wasylko stated that it would be very simple to use a PIN to locate a particular property on the tax maps in his office. All of this testimony supports our finding above that the use of permanent real estate index numbers in advertisements and notices for the sale of tax delinquent properties provides sufficient notice to a taxpayer that his property taxes are in default.
Next, respondents contend that section 239 of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 720) was not complied with because the county clerk failed to certify the tax judgment, sale, redemption and forfeiture records.
The pertinent part of section 239 provides:
"[T]he county clerk, assisted by the collector, shall carefully examine the list upon which judgment has been entered * * * and * * * shall make a certificate to be entered on the record, following the order of court that such record is correct, and that judgment was entered upon the property therein mentioned for the taxes, interest and costs due thereon, which certificate shall be attested by the circuit clerk under seal of the court." (Ill. Rev. Stat. 1983, ch. 120, par. 720.)
Respondents maintain that the county clerk has not certified the record and that the clerk of the circuit court has failed to attest that judgment was entered under the seal of the court.
The petitioner has filed a motion to supplement the record with the second supplemental record, which consists of the last page of volume IV of the four tax record volumes filed with the Lake County circuit court. The petitioner has also filed, as part of the second supplemental record, the petitioner's December 8, 1981, application for judgment and accompanying affidavit in which the petitioner states that the properties in question are set forth in volumes I through IV of the petitioner's tax judgment books and that these books were filed with the clerk of the circuit court on November 16, 1981. Respondents have filed objections to the petitioner's motion, arguing that because all the books were not admitted into evidence, the order for judgment and sale of the properties cannot be added to the record. *824 We ordered the motion and objections taken with the case.
 9 The tax judgment books were made part of the circuit court record at the time the petitioner filed them in this matter with the circuit clerk. That the books were not introduced at trial is immaterial to the consideration of them in this court. The law requires that these public records be retained by the county clerk. (Ill. Rev. Stat. 1983, ch. 120, par. 713.) As the only part of these four volumes which is pertinent to the instant issue is the page containing the judgment order entered on the properties, we allow the applicant's motion to supplement the record with that document.
 10 A review of the document shows that judgment was properly entered against the tax delinquent properties prior to their sale. The order contains the sworn statement of the petitioner that the foregoing records are the complete and correct list of tax delinquent properties. The statement is attested to by the Lake County clerk. Additionally, the document bears the certification of the circuit clerk of Lake County made on the date of the sale, December 14, 1981, as required by section 239 of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 720). That certification states, in exact compliance with the language of the certification provided in section 239, that "the foregoing is a true and correct record of the delinquent real estate in said County, against which judgment and order of sale was duly entered in the Circuit Court for said County on the 8th day of December, A.D., 1981." See Ill. Rev. Stat. 1983, ch. 120, par. 720.
As the second supplemental record establishes that the county clerk and the petitioner examined the list of properties upon which judgment had been entered and that the circuit clerk certified that the judgment had been entered, we conclude that there was substantial compliance with the terms of section 239.
 11 Respondents next contend that no certificates of purchase were issued to the county pursuant to the sale of the tax delinquent properties in question. The petitioner maintains that this contention is refuted by the record.
At trial respondents initiated questioning regarding the tax certificates, asking Wayne Wasylko, supervisor of the tax extension and redemption office of Lake County and agent of County of Lake trustee, to whom the tax sale certificates were delivered. Wasylko responded that the certificates were delivered to the County of Lake trustee and were in Wasylko's office. Respondents did not disagree or challenge this testimony. The State implies that because respondents did not disagree with Wasylko's testimony or challenge it, the testimony established the existence of the certificates of sale. However, *825 we note from our examination of the record that, although respondents did not challenge the certificates' existence at trial, they contended both in their trial brief and in their post-trial motion that the certificates were never issued.
As further proof of the certificates' existence, though, the petitioner directs our attention to a petition for an order directing the issuance of a tax deed for one of the properties redeemed under protest by respondents. A certificate of purchase number is displayed at the top of the petition, and the County of Lake, as trustee, is the named petitioner for the tax deed. The petition contains the statement, "[Y]our petitioner now holds, as purchaser or assignee, the Certificate of Sale issued by the County Clerk of said County," and is attested to by "Petitioner, by the Director of Tax Extension Division, Office of the County Clerk" as being "true in substance and in fact."
While this document indicates that a certificate of sale was issued for that particular piece of property, the fact remains that the best evidence of the existence of the certificates is the certificates themselves, which do not appear anywhere in the record. What does appear in the record, however, is the petitioner's trial brief which contains the statement, "No certificates of sale were issued for the parcels involved in this case." Although this statement appears to create a conflict in the petitioner's position at trial and his position in this court, we must give credence to the evidence presented to us, i.e., Wasylko's testimony and the aforementioned petition for the issuance of a tax deed for one of the respondents' properties, rather than to a trial brief, the veracity of which we are not able to ascertain. Furthermore, in reaching its decision that the petitioner had fully complied with the law, the trial court noted that it had considered all the testimony, evidence, and argument presented to it. This would include the testimony of Wasylko, the aforementioned petition for the issuance of a tax deed, and the petitioner's trial brief. As the court found that petitioner had complied with the law regarding tax sales and redemptions, we assume that it determined that the certificates of purchase did issue. Further, we note that respondent again raised the issue of no certificates in his post-trial motion and that the court denied that motion. Thus, on the evidence that is before us, we conclude that the certificates of purchase were issued to the County of Lake trustee.
 12 Next, respondents argue that the county's authority, as trustee, to make noncash bids on properties at tax sales is unconstitutional. We find respondents' contention totally without merit.
Section 216d of the Act reads, in pertinent part:

*826 "Whenever any tract of land or lot is offered for sale under any of the provisions of this Act, the County Board of the County in which the same is located, in its discretion, may bid therefor, in the name of the said County as trustee for all taxing districts, including the State, having an interest in the taxes or special assessments for the nonpayment of which said tract of land or lot is sold. * * *. The County shall apply on the bid the unpaid taxes and special assessments due upon the tract of land or lot and no cash need be paid." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 697d.)
Thus, the very terms of the statute authorize the county to make noncash bids and thereby annul respondents' claim that permitting a county to make noncash bids defeats the Act. Moreover, respondents' contention that section 216d is unconstitutional ignores the Illinois Supreme Court's finding in People v. Wrage (1960), 20 Ill.2d 55, 169 N.E.2d 225. Wrage involved Lake County's noncash bid on a number of vacant lots at a tax foreclosure sale. The respondents in Wrage launched a constitutional attack on section 216d, alleging, among other things, that the section violated the due process clause. The supreme court found the constitutional attack without merit and held that the county's purchase by a noncash bid substantially complied with the statute. 20 Ill.2d at 62.
 13 Statutes are presumed constitutional, and all reasonable doubts are to be resolved in favor of upholding the legislation. (Spinelli v. Immanuel Evangelical Lutheran Congregation, Inc. (1986), 144 Ill. App.3d 325, 331, 494 N.E.2d 196.) In the instant case, respondents have not made it clear to this court how section 216d violates the United States and the Illinois Constitutions, and, therefore, they have failed to rebut the statute's constitutionality.
Respondents also maintain that "[b]y permitting the County to bid and allow the Forest Preserve to get title to land defeats others and avoids the Condemnation Statutes and laws of Illinois." As there is absolutely no basis in the record before us for this assertion, we find it would be pointless to address what the county's intention with respect to the future disposition of property acquired at a tax sale may be. Also, since respondents, in the case at bar, redeemed the property in issue before the county acquired title, such an argument is irrelevant to this appeal.
Finally, we note that respondents' claim that the county's use of noncash bids on delinquent properties gives them priority over bidding by other taxing bodies is unsupported by the record. As the petitioner accurately points out, no evidence appears in the record to *827 show that any governmental unit other than the county, as trustee, made any bids on the property in question. Additionally, the county's bidding on the property was explained at trial by Wayne Wasylko, supervisor of the Lake County clerk's tax extension and redemption office and agent for the County of Lake trustee. In response to respondents' query as to whether the county had a policy "to buy all unpaid items on the tax judgment book," Wasylko replied:
"The County of Lake has  as allowed by statute, has a standing bid at the annual tax sale that any property that is not bid upon by any other tax buyer will be purchased by the County of Lake Trustee."
In our view, the county's use of noncash bids on properties at tax foreclosure sales is permitted both statutorily and constitutionally.
Respondents next argue that the county improperly filed 238 separate petitions for tax deeds, thereby causing respondents to incur extra costs at the time of redemption. It is respondents' position that had all the property been joined in one petition for tax deed, then only one publication and one fee for sheriff's service would have been incurred by respondents, saving them a considerable sum of money.
The redemption petitions in question are regulated by sections 263 and 266 of the Act (Ill. Rev. Stat. 1983, ch. 120, pars. 744, 747), as well as by the Illinois Constitution (Ill. Const. 1970, art. IX, §§ 8(b)(1), (c)).
Section 8(b)(1) of article IX of the Illinois Constitution provides:
"The right of redemption from all sales of real estate for the non-payment of taxes or special assessments * * * shall exist in favor of owners and persons interested in such real estate for not less than two years following such sales." (Emphasis added.) (Ill. Const. 1970, art. IX, § 8(b)(1).)
Section 8(c) provides:
"Owners, occupants and parties interested shall be given reasonable notice of the sale and the date of expiration of the period of redemption as the General Assembly provides by law." (Emphasis added.) Ill. Const. 1970, art. IX, § 8(c).
 14 Notice to owners, occupants or parties interested in the expiration of the redemption period is mandated by section 263 of the Act. (Ill. Rev. Stat. 1983, ch. 120, par. 744.) That section provides that the purchaser or assignee of any purchaser of real estate sold for nonpayment of general taxes shall cause notice to be served by the sheriff of the county in which the property is located to owners, occupants and parties interested in the property who, upon diligent *828 inquiry, can be found. For those who cannot be ascertained by diligent inquiry, section 263 provides for redemption notice by publication. For purposes of published notice, the statute specifically provides:
"Such notice of publication shall include not more than one parcel of real estate listed and sold in one description, except where more than one parcel of real estate is owned by one party or person, in which case all of the parcels owned by such persons may be included in one notice." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 744.)
This language is the only language within section 263 dealing with notice of redemption which makes mention of combining multiple properties on one notice. It is clear from the language that a purchaser is not required to combine multiple properties but rather has the option of combining them in one publication.
We note that section 266 of the Act, dealing with the filing of a petition for issuance of a tax deed and notice thereof, also mandates that such notice "shall be given to occupants, owners and persons interested in the real estate in the same manner as provided in Section 263." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 120, par. 747.
Further, section 263 does not require a person seeking to redeem property to have complete legal or record title to the property but only an undefined interest in the real estate. (People v. Hess (1955), 7 Ill.2d 192, 197, 130 N.E.2d 280; In re Application of Du Page County Collector (1981), 98 Ill. App.3d 950, 952, 424 N.E.2d 1204.) Here, as the applicant points out, the testimony of Wayne Wasylko, agent of the County of Lake trustee, indicated that upon the advice of the title company used by the county in determining who the "interested parties" are in matters involving tax deeds, the county notified all people suspected of having an interest in the property at issue. Wasylko testified that the title company advised the county:
"[T]hat in order to perfect good service in the event that this went all the way to a Tax Deed, that when dealing with the Drobnick group that we should notify each of the members of the Drobnick family, their known trusts, banks, because there was some concern that the title might be shifted around from one member to another. And then if that had been the case, we would not have gotten good Tax Deed."
 15 Based on this advice, it was not unreasonable for the county to issue notices to all persons who possibly had an interest in the more than 200 parcels of property in question, despite the fact that all those persons did not appear on the legal titles to those parcels. *829 Under the facts and circumstances of this case, we conclude that the county's strict compliance with both the Illinois Constitution (Ill. Const. 1970, art. IX, § 8) and the applicable notice provisions of the Act (Ill. Rev. Stat. 1983, ch. 120, pars. 744, 747) to ensure that all interested parties received notice of the tax sale and were advised of their rights with respect to that sale can only be construed as proper conduct.
 16, 17 Without any citation to relevant authority, respondents last contend that the petitioner failed to prove that the tax judgment amount was accurate or correct. Supreme Court Rule 341(e)(7) (107 Ill.2d R. 341(e)(7)) provides, among other things, that an appellant's brief contain citations to the relevant authority supporting the argument advanced on appeal. (See Village of Cary v. Jakubek (1984), 121 Ill. App.3d 341, 345, 459 N.E.2d 651; Michalek v. Village of Midlothian (1983), 116 Ill. App.3d 1021, 1039, 452 N.E.2d 655.) A contention that is supported by argument but by no authority whatsoever does not satisfy the requirements of Supreme Court Rule 341(e)(7). (Fuller v. Justice (1983), 117 Ill. App.3d 933, 942-43, 453 N.E.2d 1133; Wilson v. Continental Body Corp. (1981), 93 Ill. App.3d 966, 969, 418 N.E.2d 56.) It is well established that bare contentions without argument or citation of authority do not merit consideration on appeal. (Deckard v. Joiner (1970), 44 Ill.2d 412, 419, 255 N.E.2d 900; Fuller v. Justice (1983), 117 Ill. App.3d 933, 942-43, 453 N.E.2d 1133.) We, therefore, consider respondents' final argument, which is unsupported by any citation to legal authority, as waived. See Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione (1986), 144 Ill. App.3d 934, 939, 494 N.E.2d 795.
 18 Finally, we note that petitioner filed a motion to strike First National Bank of Waukegan, trustee, as a defendant-appellant in the instant case and we ordered that motion to be taken with the case. As the First National Bank of Waukegan, trustee, is not an appellant in this matter, and no reference has been made to that fact in this appeal, we find the issue of its status as an appellant to be moot.
For all of the foregoing reasons, we affirm the judgment of the circuit court of Lake County.
Affirmed.
LINDBERG, P.J., and WOODWARD, J., concur.