No. 2—09—0554
Opinion filed January 28, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of De Kalb County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07—CF—625 |
| | ) | |
| BRIAN HORSMAN, | ) | Honorable |
| | ) | Robbin J. Stuckert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Bowman and Burke concurred in the judgment and opinion.

**OPINION**

On May 26, 2009, the trial court sentenced defendant, Brian Horsman, to 30 months' conditional discharge and 180 days' incarceration in the De Kalb County jail upon his plea of guilty to the offense of felony driving while his license was revoked (625 ILCS 5/6—303(a), (d—3) (West 2006)). Defendant appeals, contending that the trial court erred in refusing his request for a sentence of electronic home monitoring instead of jail. We affirm.

BACKGROUND

On November 20, 2007, the State charged defendant with felony driving while his license was revoked, alleging that he had committed six prior such violations. Defendant entered an open plea of guilty to the charge on November 10, 2008. At a sentencing hearing on February 17, 2009,

defendant requested that he be placed on electronic home monitoring as a means of fulfilling the statutory requirement that he be sentenced to imprisonment. The trial court rejected the argument that electronic home monitoring fulfilled the imprisonment requirement, and the court sentenced defendant to 180 days' incarceration in the De Kalb County jail. The sentencing order reflects that defendant was given work release. On May 26, 2009, the trial court denied defendant's motion to reconsider his sentence, and defendant filed a timely appeal.

ANALYSIS

In pleading guilty to the charge, defendant admitted that his driver's license had been revoked due to a conviction of driving under the influence (DUI) and that he had at least four prior "violations" for driving while his license was revoked. Section 6—303(d—3) of the Illinois Vehicle Code (Code) applied and provided as follows:

> "Any person convicted of a fourth [or subsequent] violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 180 days if the revocation was for a violation of Section 11—401 or 11—501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, *** or a statutory summary suspension under Section 11—501.1 of this Code." 625 ILCS 5/6—303(d—3) (West 2006).

Accordingly, defendant admits that he had to be sentenced to a minimum of 180 days' imprisonment.[1] He contends that electronic home monitoring as an alternative to jail is allowed under section 6—303(d—3).

---

[1]The provision that a defendant serve a minimum term of imprisonment constitutes a mandatory minimum sentence, meaning that a defendant must be incarcerated for at least a certain specified period of time. *People ex rel. Birkett v. Jorgensen*, 216 Ill. 2d 358, 363 (2005).

We first address whether this issue is moot. The parties concede mootness because defendant has completed his jail sentence. Nevertheless, both parties contend that the public interest exception to the doctrine of mootness applies. We agree.

The public interest exception allows the court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The public interest exception is narrowly construed and requires a clear showing of each criterion. *Alfred H.H.*, 233 Ill. 2d at 355-56. In *Alfred H.H.*, our supreme court held that the sufficiency-of-the-evidence issue raised there was not of sufficient breadth, or of broad enough public interest, to satisfy the first prong. However, the court gave examples of types of issues that fulfill the first requirement, which included a question about a statutorily required notice. *Alfred H.H.*, 233 Ill. 2d at 356-57. Here, the issue involves statutory construction, which is of broad public interest and therefore of a public nature. The second prong is met here because this is an issue of first impression, and there does not appear to be any authoritative determination within Illinois law. *In re Charles K.*, No. 4—10—0203, slip op. at 13 (Ill. App. Nov. 23, 2010). Consequently, there is a "pressing need" for this court to issue an advisory opinion. See *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007). Regarding the third prong, there is a likelihood of future recurrence of the question because, as the record in this case reveals, two different trial judges in the same circuit ruled differently on the question in two separate cases. Accordingly, we hold that the public interest exception applies, and we proceed to consider the merits of defendant's argument.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *JB4 Air LLC v. Department of Revenue*, 388 Ill. App. 3d 970, 973 (2009). The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *JB4 Air*, 388 Ill. App. 3d at 973. When the language of a statute is clear and unambiguous, it must be applied without the use of other aids of construction. *JB4 Air,* 388 Ill. App. 3d at 973. However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous, and the court may consider extrinsic aids of construction to discern the legislature's intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). Questions of pure statutory construction are reviewed *de novo*. *Jorgensen*, 216 Ill. 2d at 363.

At issue is the definition of the word "imprisonment" in section 6—303(d—3). Defendant contends that nothing in the statute precludes electronic home monitoring. Defendant's argument is based on a syllogism. He argues that "imprisonment" requires that a person be in custody; electronic home monitoring is a form of custody; therefore, electronic home monitoring satisfies the "imprisonment" condition of section 6—303(d—3). Alternatively, defendant argues that, if the statute is ambiguous, we are required to apply the rule of lenity.

The statute does not supply a definition of "imprisonment." When a statute contains undefined terms, it is appropriate to use a dictionary to ascertain the plain and ordinary meaning of those terms. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). Webster's Third New International Dictionary defines "imprisonment" as "the act of imprisoning or the state of being imprisoned." Webster's Third New International Dictionary 1137 (1986). "Imprison" means "to put in prison:

confine in a jail." Webster's Third New International Dictionary 1137 (1986). This is the beginning of our inquiry.

Legislative intent can also be ascertained from the use of the term in other sections of the same or other Illinois statutes. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005). While the legislature did not define the term "imprisonment" in section 6—303(d—3), it defined it in the Unified Code of Corrections as follows:

> " 'Imprisonment' means incarceration in a correctional institution under a sentence of imprisonment and does not include 'periodic imprisonment' under Article 7." 730 ILCS 5/5—1—10 (West 2008).

The State relies on this definition for its position that the word "imprisonment" in section 6—303(d—3) unambiguously means incarceration in a correctional institution rather than confinement by electronic home monitoring. Yet, our analysis cannot end with section 5—1—10, because we must examine defendant's argument that the Electronic Home Detention Law recognizes that electronic home monitoring is a form of imprisonment.

Section 5—8A—3 of the Electronic Home Detention Law (Law) (730 ILCS 5/5—8A—3 (West 2008)) allows for certain individuals serving terms of imprisonment to be released from a correctional institution and placed in an electronic home detention program. A person serving a sentence for a conviction of a Class 1 felony, other than an excluded offense,[2] may be placed in an electronic home detention program for a period not to exceed the last 90 days of incarceration. 730

_____

[2]Excluded offenses are predatory criminal sexual assault of a child; aggravated criminal sexual assault; criminal sexual assault; aggravated criminal sexual abuse; and felony criminal sexual abuse. 730 ILCS 5/5—8A—3(d) (West 2008).

ILCS 5/5—8A—3(b) (West 2008). A person serving a sentence for a conviction of a Class X felony, other than an excluded offense, may be placed on electronic home detention for a period not to exceed the last 90 days of incarceration, provided that the person was sentenced after the effective date of the Law and was not prohibited from the program in the sentencing order. 730 ILCS 5/5—8A—3(c) (West 2008). Subsection (e) provides that a person serving a sentence for a conviction of a Class 2, 3, or 4 felony offense that is not an excluded offense may be placed in the program pursuant to Department of Corrections administrative directives. 730 ILCS 5/5—8A—3(e) (West 2008). The Law attaches other conditions to release into an electronic home detention program, including that the person is 55 years of age or older, the person is serving a determinate sentence, and the person has served at least 25% of the sentenced prison term. 730 ILCS 5/5—8A—3(d) (West 2008). Section 5—8A—4.1 of the Law then makes a person who fails to comply with a condition of the program in one of the ways described subject to arrest and prosecution for the crime of escape. One of the elements of the crime of escape is that the offender escaped from a penal institution or from the custody of an employee of a penal institution. 720 ILCS 5/31—6 (West 2008). These provisions seem to lead to the conclusion that electronic home monitoring is a form of imprisonment.

Yet, we cannot conclude from the language of the Law, discussed above, that the legislature intended the word "imprisonment" as used in section 6—303(d—3) of the Code to mean electronic home detention, because we recognize that the legislature may require a sentence to be served in a traditional prison or jail setting. This is evident in the Law, which excludes certain offenders from participation in an electronic home detention program. Additionally, we recognize that the legislature imposed conditions on participation in an electronic home detention program. On the other hand, the

legislature provided that persons sentenced to conditional discharge, as defendant in our case was, may apply for electronic home detention. 730 ILCS 5/5—8A—3(f)(3) (West 2008). Consequently, we conclude that the word "imprisonment" as used in section 6—303(d—3) is ambiguous, and we must resort to the use of extrinsic aids to determine its meaning.

Examples from case law reinforce our conclusion that "imprisonment" as used in section 6—303(d—3) is ambiguous. In *People v. Moss*, 274 Ill. App. 3d 77, 80 (1995), the court held that the defendant, who was serving a sentence for burglary and was released on electronic home monitoring, was committed to the Department of Corrections and thus when he sold drugs from the environs of his home, he did so within a penal institution. In *People v. Moncrief*, 276 Ill. App. 3d 533, 538 (1995), this court held that the defendant, a parolee from the Department of Corrections who was on electronic home monitoring as a condition of parole, was committed to the Department of Corrections and thus was subject to consecutive sentencing. To say that the defendants in *Moss* and *Moncrief* were committed to the Department of Corrections does not answer the question of what the legislature intended by its use of the word "imprisonment" in section 6—303(d—3). Both defendants were initially sentenced to the Department of Corrections and were then released on electronic home monitoring. Neither served his full sentence on electronic home monitoring as defendant in our case proposed to do. In *Moss*, the defendant and his mother signed an agreement that their home was an extension of the defendant's assigned placement in a correctional facility, which was an important factor in the court's decision. *Moss*, 274 Ill. App. 3d at 79.

As we have determined that the word "imprisonment" is ambiguous, we now turn to extrinsic aids of construction to discern what the legislature intended. One type of extrinsic aid courts use to determine legislative intent is the legislative history of the statute. *People v. De Leon*, 387 Ill. App.

3d 1035, 1040 (2009). The legislative history behind the enhancement of the penalties for multiple convictions of driving while one's license is suspended or revoked as a result of a DUI conviction is instructive. Senator Dan Cronin, the bill's chief Senate sponsor, expressed the legislature's frustration with the incorrigibility of offenders who repeatedly drive with revoked licenses and, in his opinion, pose such a threat that they need to be kept "locked up." 94th Ill. Gen. Assem., Senate Proceedings, May 11, 2005, at 96 (statements of Senator Cronin).

This punishment goal is at odds with the realities of electronic home monitoring, as expressed by one court:

"[W]hile at home, an offender enjoys unrestricted freedom of activity, movement, and association. He can eat, sleep, make phone calls, watch television, and entertain guests at his leisure. Furthermore, an offender confined to his home does not suffer the same surveillance and lack of privacy that he would if he were actually incarcerated." (Internal quotation marks omitted.) *Commonwealth v. Kyle*, 874 A.2d 12, 21(Pa. 2005).

In rejecting electronic home monitoring as an option, the trial court in our case uttered the same sentiments.

The Fourth District of the Illinois Appellate Court has declared that electronic home monitoring is not intended to be punishment. *Hadley v. Montes*, 379 Ill. App. 3d 405, 411 (2008). In *Hadley*, the plaintiff was an inmate at Lawrence Correctional Center, having been committed before the passage of the Law. *Hadley*, 379 Ill. App. 3d at 406. He was paroled with the requirement that he submit to electronic home monitoring while on parole. *Hadley*, 379 Ill. App. 3d at 406. He filed suit against the Prisoner Review Board members on the grounds that electronic home detention made his punishment more onerous and that the retroactive application of the Law

violated the *ex post facto* clause of the United States Constitution (U.S. Const., art. I, §§9, 10). *Hadley*, 379 Ill. App. 3d at 406-07. The trial court granted the defendants' motion to dismiss the plaintiff's complaint, and the plaintiff appealed. The appellate court affirmed and stated:

"[T]he passage of the [Law] did not impose punishment. The purpose of the parole and mandatory supervised release programs is not to punish offenders but to extend the Department of Correction's [*sic*] 'control over the conduct of persons who repeatedly are denied parole and who when released have only minimal incentives to conform to society's standards.' [Citation.] Here, the purpose of electronic monitoring was not to punish plaintiff but to foster his return to society through a supervised transition from prison life." *Hadley*, 379 Ill. App. 3d at 411.

Even if we were to view electronic home monitoring as a type of punishment appropriate to the situation in the instant case—in the sense that it would restrict some freedom of movement—it is not the equivalent of imprisonment. That was the holding in *People v. Stocke*, 212 Ill. App. 3d 547, 551 (1991), *abrogated on other grounds by People v. Lowe*, 153 Ill. 2d 195 (1992), where the defendant argued that his sentence of home confinement was prohibited because he could not be imprisoned for a petty offense. The court disagreed that home confinement was the equivalent of imprisonment, stating, "To the contrary, we think it is quite different from imprisonment ***." *Stocke*, 212 Ill. App. 3d at 551.

In our case, defendant stipulated that he had "at least" four prior "violations" of section 6—303. The record shows that the instant offense was his seventh violation. Defendant demonstrated himself to be one of those incorrigible offenders who prompted the legislature to enact higher penalties. The legislature's intent to punish these serial offenders would be inconsistent with

the availability of the relative nonpunishment of electronic home monitoring in lieu of actual incarceration inside a penal institution, which includes a county jail. See *People v. Campa*, 217 Ill. 2d 243, 255 (2005) (commitment to county jail is incarceration). Accordingly, the trial court did not err in denying defendant's request to serve his term of imprisonment on electronic home monitoring.

Defendant argues that we must apply the rule of lenity in this case. It is well settled that the rule of lenity does not require a court to construe a statute so rigidly as to defeat the intent of the legislature. *In re Detention of Powell*, 217 Ill. 2d 123, 142 (2005). Here, we have determined that the intent of the legislature was to require actual incarceration within a penal institution, and to apply the rule of lenity would defeat the legislature's intent. Accordingly, we affirm the judgment of the circuit court of De Kalb County.

Affirmed.