2022 IL App (1st) 200604

FIFTH DIVISION
October 28, 2022

Nos. 1-20-0604 & 1-20-0606 (cons.)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessments for the Year 2014 and Prior Years | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Wheeler Financial, Inc., | ) ) | |
| Petitioner-Appellee, | ) ) | No. 18 COTD 6970 |
| v. | ) ) | No. 19 COVT 857 |
| Maria Pappas, Cook County Treasurer, *ex officio* Cook County Collector, | ) ) ) | |
| Respondent-Appellant). | ) ) | Honorable Patrick T. Stanton Judge Presiding. |

PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion. Justices Cunningham and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, Wheeler Financial, Inc. (Wheeler), filed petitions for sales in error for two properties under section 21-310(a)(5) of the Property Tax Code (Code) (35 ILCS 200/21-310(a)(5) (West 2018)), contending that the assessor incorrectly assessed two properties. The circuit court granted both petitions. Respondent, the Cook County Collector (Collector), appeals, asserting that

the mistakes in the assessor's property characteristic records do not warrant relief under section 21-310(a)(5) of the Code. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Wheeler purchased the delinquent taxes of two residential properties at the Collector's tax sale in 2016. In December 2019, Wheeler filed two petitions for sales in error under section 21-310(a)(5) of the Code (*id.*), stating that the properties were incorrectly described in the assessor's records. One property was shown as not having a garage when it actually did, while the other property was shown as having a garage when it actually did not. Among the evidence submitted was a document titled, "Cook County Assessor's Residential Property Characteristics," which was published on the open data portion of the Cook County government website. The document listed the 82 different property characteristics that are used to assess residential properties, with one of the characteristics being whether a property has a garage. The Collector objected to the petitions.

¶ 4      At a hearing, the parties noted that Wheeler had seven petitions pending—five relating to assessor errors and two relating to treasurer errors.[1] The petitions were heard simultaneously, and, on March 11, 2020, the circuit court issued a written decision for one petition that was intended to apply to all five of the petitions relating to assessor errors. The court explained that to be a sale in error under the Code, the error must implicate the tax sale process or have a rational relationship to the buyer's investment. In finding that the alleged errors implicated the tax sale process, the court stated that the process that ends in the tax sale begins with an assessment of a property's value. Property characteristics directly affect the assessor's opinion of value, which in turn provides the basis for the delinquent taxes that result in the sale. The court also found that because under section 21-310(a)(5), both the Collector and a property owner can seek a sale in error, the

---

[1]Two of Wheeler's other petitions are the subject of another consolidated appeal: In the Matter of the Application of the Cook County Collector, etc., 1-20-0600 & 1-20-0601 (cons.).

section cannot only be read from the perspective of a loss to the buyer. An error is an error, regardless of which side of the transaction claims a loss. Still, the error must have some substance and cannot be inconsequential. The court found that the two subject tax sales were sales in error. The court vacated the tax sales and directed the Collector to issue refunds to Wheeler, with interest as provided by statute. The Collector appealed.

¶ 5                                    II. ANALYSIS

¶ 6      On appeal, the Collector contends that the mistakes in the assessor's property characteristic records do not warrant relief under section 21-310(a)(5) of the Code. The Collector states that to provide a basis for vacating a tax sale, an error must either threaten the tax sale process or a tax buyer's investment. The Collector argues that because the assessor maintains records on the characteristics of taxable properties only for the assessment process, errors in those records do not affect tax sales. Further, nothing in the Code obligates the assessor to collect or maintain the records to sell delinquent taxes. The Collector also asserts that Wheeler did not offer any evidence that the assessor's mistakes had any effect on the amount of taxes purchased by the tax buyer. The Collector states that the circuit court's decision will lead to absurd results because it will nullify tax sales on irrational grounds.

¶ 7      As background, the Collector holds an annual tax sale, at which delinquent real estate taxes are sold. *Id.* § 21-150. Before the sale, the Collector files for a judgment in the circuit court for the amount of taxes due, plus costs, and an order authorizing a sale in satisfaction of the judgment. *Phoenix Bond & Indemnity Co. v. Pappas*, 309 Ill. App. 3d 779, 781 (1999), *aff'd*, 194 Ill. 2d 99 (2000). At the sale, a tax buyer bids on a given property and, after following certain procedures, receives a tax lien on the property. *Id.* The tax buyer is issued a certificate of purchase as proof of the lien. 35 ILCS 200/21-250 (West 2018).

¶ 8    Section 21-310 of the Code sets out a process for undoing a tax sale, known as a sale in error. *Id.* § 21-310. A claimant seeking a sale in error asks " 'the circuit court to undo the sale of a specific parcel's taxes for an enumerated reason.' " *In re Application of the County Treasurer & ex officio County Collector of Warren County*, 2017 IL App (3d) 160396, ¶ 8 (quoting *Bueker v. Madison County*, 2016 IL App (5th) 150282, ¶ 50). Section 21-310 of the Code " 'delineates who may apply for a sale in error, where and on what grounds the application must be made, when these grounds must occur, and the county collector's responsibilities in the event a sale in error is declared by the court.' " *Id.* (quoting *In re Petition for Declaration of Sale in Error*, 256 Ill. App. 3d 159, 162 (1994)). In seeking a sale in error here, Wheeler invoked section 21-310(a)(5) of the Code, which states:

> "(a) When, upon application of the county collector, the owner of the certificate of purchase, or a municipality which owns or has owned the property ordered sold, it appears to the satisfaction of the court which ordered the property sold that any of the following subsections are applicable, the court shall declare the sale to be a sale in error:
>
> * * *
>
> (5) the assessor, chief county assessment officer, board of review, board of appeals, or other county official has made an error (other than an error of judgment as to the value of any property)[.]" 35 ILCS 200/21-310(a)(5) (West 2018).

If a sale is declared to be a sale in error, the county collector refunds the amount paid to the tax buyer. *Id.* § 21-310(d).

¶ 9 The parties do not dispute that the assessor incorrectly identified whether two properties had garages. The issue is whether the assessor's mistakes were an error under section 21-310(a)(5) of the Code. Because the issue involves a matter of statutory interpretation, our review is *de novo*. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17 (statutory interpretation is a question of law subject to *de novo* review).

¶ 10 Initially, Wheeler states that the appeals are moot because the Collector cannot obtain meaningful relief. The refunds have been paid, and the tax certificates have been cancelled. Wheeler also notes that the Collector never requested a stay of enforcement of the orders vacating the tax sales, and no stay was imposed.

¶ 11 A case on appeal becomes moot when intervening events have made it impossible for the reviewing court to grant effective relief to the complaining party. *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007). "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 12 In asserting that the appeals are not moot, the Collector relies in part on *Davis v. Board of Review of the Department of Labor*, 125 Ill. App. 3d 67 (1984), which involved a dispute about a denial of unemployment benefits. The plaintiff contended that the appeal was moot because her benefits had been paid, and there were no statutory means for recoupment. *Id.* at 68-69. In finding that the appeal was not moot, the court stated that where a party does not accept an adverse judgment, "the cause is not moot simply because he pays the judgment even if no restitution could follow reversal since an erroneous judgment is an injury *per se* from which the law will intend he is or will be damnified by its continuing unreversed." *Id.* at 71. *Davis* has not been cited for this proposition, though its finding that the appeal was not moot seems to apply here.

¶ 13    Regardless, there is another basis for addressing the merits of the Collector's appeal despite the refunds having been issued—the public interest exception to the mootness doctrine. This exception allows a court to reach the merits of a case that would otherwise be moot "if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose of guiding public officers, and the question is likely to recur." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 44. "The public interest exception is narrowly construed and requires a clear showing of each criterion." *People v. Horsman*, 406 Ill. App. 3d 984, 986 (2011).

¶ 14    All three criteria are met here. The issue on appeal involves statutory construction, which "is of broad public interest and therefore of a public nature." *Id.* Further, as the Collector notes, "[t]ax revenues are literally the lifeblood of government." *Rosewell v. Chicago Title & Trust Co.*, 99 Ill. 2d 407, 416 (1984). The second criterion is met because, as explained below, there is little published authority on whether an assessor's mistake about a property characteristic can be grounds for a sale in error. Lastly, the question is likely to recur. The Collector notes that there are three court calls per week dedicated exclusively to hearing petitions to vacate tax sales. In one week alone, in May 2022, 85 sale in error petitions were on the sale in error call, and 34 of those were brought under section 21-310(a)(5) alleging county error. The cases that formed the basis of the circuit court's order here involved five petitions brought by Wheeler alone. The public interest exception applies, and the appeals are not moot.

¶ 15    Turning to the merits and as noted above, whether the assessor's mistakes warrant a sale in error under section 21-310(a)(5) of the Code is a matter of statutory interpretation. The primary goal in interpreting a statute is to give effect to the legislature's intent. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 35. The best indicator of that intent is the language of the statute itself, given its plain and ordinary meaning. *Tillman*,

2021 IL 126387, ¶ 17. "If the language is clear and unambiguous, it should be given effect as written without resort to other aids of statutory interpretation." *Id.* A court considers language in the context of the entire statute, as well as the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another. *Carmichael*, 2018 IL 122793, ¶ 35. A court also presumes that the legislature did not intend to produce absurd, inconvenient, or unjust results. *Id.*

¶ 16       The purpose of the sale in error statute is to relieve tax buyers " 'from the effect of *caveat emptor* purchases at void tax sales.' " *In re Application of the County Treasurer & ex officio County Collector of Warren County*, 2017 IL App (3d) 160396, ¶ 10 (quoting *La Salle National Bank v. Hoffman*, 1 Ill. App. 3d 470, 476 (1971)). The Code also encourages buyers at tax sales, increases the collection of taxes, and "free[s] land to reenter the stream of commerce and bear its share of the tax burden." *In re Application of Anderson*, 162 Ill. App. 3d 815, 820 (1987).

¶ 17       The only published case relating to whether an assessor's mistake warranted a sale in error under section 21-310(a)(5) is *In re Application of the County Treasurer & ex officio County Collector*, 2020 IL App (1st) 190014 (hereinafter *Eeservices*).[2] In *Eeservices*, the court found that the assessor's misidentification on its website that a property was located on Dolton Avenue instead of Dolton Road did not warrant a sale in error. The court stated that the assessor's mistake had nothing to do with the tax sale process. *Id.* ¶ 15. There was nothing in the Code that required the assessor to maintain a website with legal property descriptions for the purpose of the tax sale process. *Id.* The court concluded that the legislature did not intend "for tax buyers to use subsection

---

[2]We disregard Wheeler's reliance on an unpublished order entered under Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021). Written orders entered under Rule 23(b) are not precedential, except in certain circumstances that do not apply here. See Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021).

(a)(5) as a loophole to request a sale in error whether or not a county mistake implicates the tax sale process or has any rational relationship to the buyer's investment." *Id.* ¶ 17.

¶ 18    *Eeservices* did not explicitly announce a test for determining whether a mistake warrants a sale in error under section 21-310(a)(5) of the Code. Still, the case indicates that, at a minimum, the mistake must either implicate the tax sale process or have a rational relationship to the buyer's investment. *Id.* Here, in contrast to the mistake on the assessor's website in *Eeservices*, the assessor's mistakes in identifying whether the properties had garages both implicates the tax sale process and has a rational relationship to the tax buyer's investment.

¶ 19    The assessor's description of property characteristics affects future tax sales. The assessor determines the value of each property listed for taxation in the county. 35 ILCS 200/9-155 (West 2018). The analysis begins with characteristics such as location, square footage, the number of bedrooms, the number of bathrooms (*Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 33), and, as the record indicates, many other characteristics, including whether the property has a garage. Examining those factual characteristics leads to the property's taxable market value. *Id.* The amount of tax due for a property is thus derived from the assessor's analysis of property characteristics. A mistake in a property characteristic would lead to an incorrect tax amount. Whether a property has a garage or not also has a rational relationship to a buyer's investment. A buyer may very well value a property differently based on whether it had a garage. Without relief under section 21-310(a)(5), the buyer may end up with a property that would not have been purchased if a characteristic that informed the basis of the tax amount had been correct.

¶ 20    That the assessor's analysis takes place well before the tax sale does not change our conclusion. The legislature must have been aware of the assessor's role when it stated that an

assessor error could be the basis for a sale in error. 35 ILCS 200/21-310(a)(5) (West 2018). Case law provides that a sale in error " 'refers to errors occurring before, or contemporaneously with, the tax sale and forfeiture.' " *Eeservices*, 2020 IL App (1st) 190014, ¶ 10 (quoting *In re Application of the County Collector for Judgment of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1979 & Prior Years*, 169 Ill. App. 3d 180, 183 (1988)). Further, the plain language of section 21-310(a)(5) does not require a tax buyer to show that the error materially affected the tax lien investment by a certain amount. Section 21-310(a)(5) states that a sale in error is available for "an error." 35 ILCS 200/21-310(a)(5) (West 2018). We do not read exceptions, conditions, or limitations into a statute that the legislature did not express if the language is clear and unambiguous. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). If the legislature wanted to provide relief only for errors that met a certain threshold of materiality, it would have done so. *Eeservices*, 2020 IL App (1st) 190014, ¶ 17, indicates that a mistake must at least implicate the tax sale process or have a rational relationship to the buyer's investment. To impose further conditions would go beyond the plain language of the statute and our case law.

¶ 21    We note that the sale in error provision works in the Collector's favor as well. The Collector also can undo a tax sale by filing a sale in error petition. 35 ILCS 200/21-310(a) (West 2018). Also, our reading of section 21-310(a)(5) is in line with the Code's purpose to encourage buyers at tax sales. See *In re Application of Anderson*, 162 Ill. App. 3d at 820. If the sale in error provision were construed narrowly, tax purchasers might be hesitant to bid on properties, thus undermining the role of the tax sale process to increase the collection of taxes and "free land to reenter the stream of commerce and bear its share of the tax burden." See *id.* And, once the tax sale is vacated on the basis of an error, another purchaser can buy the delinquent taxes anew. The Collector's

policy arguments about the wisdom of competing interpretations of the sale in error provision are better suited to the legislature. See *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 383 (2008).

¶ 22 The assessor's mistakes in identifying whether the two subject properties had garages were errors that warranted a sale in error under section 21-310(a)(5) of the Code. The circuit court properly vacated the tax sales.

¶ 23                                     III. CONCLUSION

¶ 24 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 25 Affirmed.

*In re Application of the County Treasurer*, 2022 IL App (1st) 200604

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 18-COTD-6970, 19-COVT-857; the Hon. Patrick T. Stanton, Judge, presiding. |
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Jonathon D. Byrer, and Oscar Garcia, Assistant State's Attorneys, of counsel), for appellant. |
| **Attorneys for Appellee:** | David R. Gray Jr., of Law Offices of David R. Gray Jr., Ltd., and Jeffrey S. Blumenthal, of Slutzky & Blumenthal, both of Chicago, for appellee. |