ILLINOIS RAILWAY MUSEUM, INC., Plaintiff-Counterdefendant-Appellant, v. ROBERT B. SIEGEL et al., Defendants-Counterplaintiffs-Appellees.

(No. 70-88; ▮▮▮▮▮)

Second District—January 26, 1971.

*Rehearing denied February 24, 1971.*

78

Thomas H. Ploss, of Libertyville, for appellant.

Hugh A. Deneen, of Woodstock, and Jerome H. Torshen, Ltd., of Chicago, for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This is an action in ejectment brought to acquire possession of certain parcels of real estate located on a former railroad right of way in McHenry County, Illinois, which parcels were adjacent to the farms of the defendants. It is alleged that defendants are unlawfully in possession of the realty and that fee simple title to it adheres in plaintiff. Defendants filed a counterclaim to quiet title in themselves.

Plaintiff is an Illinois, not-for-profit, corporation engaged in the operation of a railway museum. The three strips of land involved in this action

were formerly part of the roadbed of the Elgin & Belvidere Electric Company, a defunct interurban electric railway. Each parcel is fifty feet in width, with varying lengths, bounded on the north by a railroad right of way owned by the Chicago and Northwestern Railway Company and bounded on the south by farms owned by the defendants.

Plaintiff's complaint alleged that it purchased the disputed parcels at tax sales held in McHenry County in 1957 and 1958. No tax deed is claimed to have been issued. Plaintiff further alleged that it purchased a quit claim deed from the prior owners-in-fee of the disputed parcels in 1961 and that it had paid all current and back real estate taxes due on the parcels at the time of purchase and continued to do so to the present time. Plaintiff further alleged that it entered upon the parcels and took possession in 1957 and remained in possession until April 10, 1968, when defendants were alleged to have taken and withheld possession unlawfully from plaintiff. Attached to the complaint was a certification by the McHenry County Clerk that the plaintiff had purchased the parcels in dispute at tax sales held on October 21, 1957 and October 20, 1958, and a copy of a quit claim deed to the parcels in dispute from Robert M. Arnold, Audry Arnold, his wife, and Stanley B. Arnold, to the plaintiff museum executed in 1961.

Defendants in their answer admitted that the plaintiff purchased the land in dispute at a tax sale, but denied that any interest in the land was thereby acquired as a result of such proceedings. Defendants also admitted the quit claim deed, but denied that plaintiff acquired any title by it. Defendants set up the affirmative defense of twenty years adverse possession. Also, defendants' counterclaim alleged adverse possession for twenty years and prayed that the quit claim deed be declared void, ordered cancelled and that title to the parcels of real estate be quieted in the defendants. They alleged that they had fenced, pastured, and cropped the disputed parcels from the time of their acquisition (1941, 1942, and 1946 respectively) until the present.

Plaintiff filed a motion to dismiss the counterclaim and for summary judgment on its complaint, arguing three separate grounds: (1) Defendants are estopped from claiming title by adverse possession by the holding of the tax sale and by their failure to assert title at that time; (2) Quit claim deed passed good title to the plaintiff; and (3) Section 7 of the Limitations Act (Ill. Rev. Stat. 1967, ch. 83, par. 7) requires a finding of legal title in plaintiff. The motion was denied by the trial court. Plaintiff here asserts the same three grounds for reversal.

It is first argued that defendants' counterclaim should have been dismissed because they were estopped from claiming title by adverse posses-

sion after the tax sales to these parcels were held. Plaintiff relies on the cases of *Moore v. Gilmer* (1933), 353 Ill. 420 and *Shippert v. Shippert* (1939), 371 Ill. 267, wherein the court held that when a person having title to or an interest in property knowingly stands by and suffers it to be sold under a judgment order or decree without asserting his title or right or making it known to the bidder, he cannot afterwards set up his claim. Plaintiff argues that all defendants had notice or were chargeable with notice, (*Chi. Title and Trust Co. v. Drobnick* (1960), 20 Ill.2d 374), and their failure to appear at the tax sale is fatal to their counterclaim.

■■ We disagree. The cases relied upon by plaintiff in support of its estoppel theory are distinguishable on their facts. The appellants in *Moore* sought review of a probate court proceedings wherein certain real estate was sold to pay decedent's debts. Published notice of the sale was defective but, shortly after the decree for sale was entered, appellants entered their appearance and filed a waiver of all errors, inaccuracies, and insufficiencies in the publication notice, and requested that a decree be entered for the sale. After the sale had been held, appellants caused certain deeds, which predated the death of the decedent, to be recorded. The deed purported to be a grant to the disputed land by decedent to appellants. The court used the equitable remedy of estoppel to prevent appellants from invalidating the sale. No useful analogy can be drawn from this case, as there is no evidence here that defendants had actual knowledge of the sale or induced the court to allow the sale, as in the cited case.

Plaintiff also relies on *Shippert* in support of its estoppel theory. *Shippert* concerns itself with partition, which by statute was made a purely equitable remedy, where every person with an interest in the property is made a party defendant. All parties to the record are adversary parties in the sense that each one is bound to make known his rights and to have his interests determined by the decree, and all are bound by the decree. Equitable estoppel against a party with such duties has no application to the present cause.

Plaintiff relies most heavily on *Drobnick* for the argument that defendants in this case are charged with actual notice of the tax sale and are bound by its result. But the factual situation in *Drobnick* is clearly distinguishable. The defendant was purchaser of a parcel of land at a tax sale; he later obtained a tax deed and paid all subsequent taxes on the property. Twenty five years later, the original owner sought redemption of the property on the grounds that purchaser had failed to take timely possession of the property as required under the Revenue Act to perfect title. The court held that the purchaser by his acts had fully

established his title under Section 7 of the Limitations Act, so as to bar plaintiff's claim to paramount title. The decision is based solely on the provisions of the Limitations Act and involves no theory of equitable estoppel.

■■■ In addition to the estoppel argument, plaintiff cites the case of *Daveis v. Collins* (1890), 43 Fed. 31 for the proposition that a tax sale stops the running of the 20 year limitation period, and the adverse possessor must possess for 20 years from the passing of the tax title. In *Daveis*, however, the statutory proceedings for acquisition of land pursuant to a tax sale were completed, tax deeds were issued and tax title accrued, as well as the accomplishment of other pertinent factors. In the present case, there was no allegation that the procedures had been completed. A certificate of sale does not pass title to the purchaser until the passing of the redemption period and the issuance of a tax deed. (*Bush v. Caldwell* (1906), 224 Ill. 93, 94; *Hammalle v. Lebensberger* (1912), 256 Ill. 547; *Hockett v. Logan* (1913), 257 Ill. 326, 327; *Wells v. Glos* (1917), 277 Ill. 516, 518-520.) Failure to obtain the tax deed is not fatal if the purchaser establishes a valid judgment against the land, a valid precept authorizing the proper person to make the sale, and a proper conveyance of the land from said person. (*Atkins v. Hinman* (1845), 7 Ill. 437, 448—449.) A tax deed constitutes *prima facie* evidence of the following, and without it the purchaser must clearly establish all of these facts to show valid title: (a) that the real estate conveyed was subject to taxation at the time the same was assessed, and had been listed and assessed in the time and manner required by law; (b) that the taxes were not paid at any time before the sale; (c) that the real estate conveyed had not been redeemed from the sale at the date of the deed; (d) that the real estate was advertised for sale in the manner and for the length of time required by law; (e) that the real estate was sold for taxes; (f) that the party claiming title was the purchaser or assignee of the purchaser; (g) that the sale was conducted in the manner required by law. (Ill. Rev. Stat. 1967, ch. 120, par. 752; *U.S. v. Meyer* (1961), 199 F.Supp. 508, 513, 518.) No deed having been alleged by plaintiff, and defendant having admitted only "(e)" above, the trial court could not rule as a matter of law that valid title passed by the tax sale and that the running of the statutory 20 year period had been thereby stopped.

■■■ The report of the decision in the *Daveis* case is a recital of the court's instructions to the jury for a directed verdict, so we may not speculate as to theories relied upon. But it may be said that the rule sought to be applied in this case by plaintiff (that the running of the limitations period is stopped by the tax sale), is generally applied only

in states where the fee title to the parcel is forfeited to the state under the applicable state revenue law. The statute of limitations does not run against a governmental body unless expressly provided in the limitations statute. In Illinois, however, the nature of the State's interest in the parcel is a lien on the property. (Ill. Rev. Stat. 1967, ch. 120, par. 697). The tax sale procedure is a foreclosure of that lien. Therefore, in Illinois, there is no violation of the rule that the limitation period does not run against the government.

■■ No cases have been cited to us nor has our research divulged any Illinois case that holds that a tax sale, in and by itself, stops the running of the limitation period. We hold that a tax sale, in and by itself, will not stop the running of time accumulating to the benefit of an adverse possessor.

Plaintiff's second ground for dismissal of the counterclaim was that the quit claim deed passed good title to the Museum, and the vested legal title is not lost through abandonment. *Marathon Oil Company v. Heath* (1966), 358 F.2d 34, 37—38; *Carter Oil Co. v. Welker* (1938), 24 F.Supp. 753, 757—758.

However, those cases do not stand for the proposition that title by adverse possession may not be had where a railroad abandons its former right of way. Rather they hold that abandonment of the property alone is not sufficient proof of adverse possession, *i.e.* the plaintiff failed to sustain his burden of proof. Neither case has application to the motion to dismiss the counterclaim and for summary judgment.

We, likewise, find no error in denial of the motion for summary judgment. The ground of equitable estoppel does not apply and thus many genuine material issues of fact were presented.

Trial of the issues was held and the trial court found against the plaintiff in his action of ejectment and further quieted title in the defendants based on 20 years adverse possession. Plaintiff, seeking reversal of the judgment, claims error by the trial court in that the preponderance of the evidence was in favor of the plaintiff. The plaintiff, it should be noted, is not seeking a new trial but requests this Court to reverse the judgment in favor of the defendants and remand the cause with directions to the trial court to enter a judgment for the plaintiff. Therefore, all of the evidence in the present case must be considered by this Court in its aspects most favorable to defendants and the issue is whether the evidence so viewed so overwhelmingly favors plaintiff that no judgment for defendants based upon it could ever stand. *Country Mut. Ins. Co. v. Murray* (1968), 97 Ill.App.2d 61.

■■ In ejectment, legal titles are involved and the plaintiff must recover

upon the strength of his own title, not upon the weakness of the title of the defendant. *Harwood v. Harwood* (1952), 412 Ill. 131, 135; *Scales v. Mitchell* (1950), 406 Ill. 130, 134—135.

■■■ The trial court committed no error in requiring plaintiff to proceed with his proof before defendants' counterclaim was presented. Plaintiff is quite right when he states that the affirmative defense of adverse possession, if proved, will defeat any title of plaintiff. But that does not relieve plaintiff of the burden of proving some claim to possession of the land at the outset, for if he fails to meet that burden, no defense of the ejectment action will be necessary.

■■■ We find that the evidence presented did establish adverse possession in each of the defendants for a period in excess of 20 years. Testimony given by defendants that the parcels in dispute had been used by them for pasturing, cropping, soil conservation, and growing hay, continuously from the time the adjacent farms were purchased, was substantiated by photographs of these activities. Plaintiff's evidence consisted of testimony by members of the Museum that they visited the parcels in question, saw "weeds" and "underbrush", and assumed that no other party claimed possession. Plaintiff's counsel argues that the Museum had no way of knowing that the land was being used and was lulled into failure to obtain the tax deed. But defendants' use need only be such as to apprise the community in the vicinity of their exclusive use and enjoyment of the land. Oral claim of ownership is not essential; conduct is sufficient. *McCue v. Carlton,* 399 Ill. 11, 16—17 (1948), and controlling the property as an owner is the ordinary mode of asserting a claim of title. (*James v. Ind. & St. Louis R.R. Co.,* 91 Ill. 554, 557 (1879).) Defendants in this cause were farmers, as are others in their vicinity. Their use of the land for pasturing, cropping, soil conservation and hay growing would apprise their neighbors of that claim.

Having found that the trial court did not err in finding adverse possession by defendants, it is unnecessary to rule on plaintiff's burden of positive proof of title, for even if it be conceded that the Museum sustained their burden, they must lose. Title by adverse possession will defeat any legal title.

The final argument of counsel for the plaintiff is that the trial judge was so biased and prejudiced against the plaintiff that a fair trial of the issues was not had. Plaintiff bases its argument on the number of times his objections were overruled, compared to the sustaining of defendants' objections, along with the comments and general attitude of the trial judge.

After reading the record, we find that many of the plaintiff's objections were overruled but in almost every instance there was a legal basis for

doing so. The remaining instances were insufficient to create reversible error. While an atmosphere of antagonism between court and counsel may be said to have existed, still we conclude that the results reached by the trial court were correct and the judgment, therefore, will be affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.