# Illinois Official Reports

## Appellate Court

---

*In re Application of the County Treasurer & ex officio County Collector*,
2020 IL App (1st) 190014

---

| | |
|---|---|
| Appellate Court Caption | *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, for Order of Judgment and Sale of Lands and Lots Upon Which All or Part of the General Taxes for Three or More Years Are Delinquent, Including General and Special Taxes, Costs and Interest, Pursuant to Illinois Property Tax Code (Eeservices, Inc., Petitioner-Appellant, v. The Cook County Collector, Respondent-Appellee). |
| District & No. | First District, Second Division<br>No. 1-19-0014 |
| Filed | January 14, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-COVT-1514; the Hon. Maureen O. Hannon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kurt H. Feuer, of Evanston, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein and Anthony O'Brien, Assistant State's Attorneys, of counsel), for appellee. |

Panel                 JUSTICE COGHLAN delivered the judgment of the court, with opinion.

Justices Lavin and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1      At the Cook County 2015 annual tax sale, GAN C, LLC, purchased nearly $1.4 million in delinquent taxes on a shopping center located in Calumet City, Illinois; the purchase certificate was ultimately assigned to petitioner, Eeservices, Inc. (Eeservices). Upon receiving the assignment, Eeservices petitioned the circuit court to vacate the tax sale, pursuant to section 21-310(a)(5) of the Property Tax Code (Code) (35 ILCS 200/21-310 (West 2018)) because the Cook County Assessor misidentified the property as located on Dolton Avenue rather than Dolton Road on its website.

¶ 2      The trial court initially granted the petition for a sale in error; however, on reconsideration, the court denied the application. The court determined "there is no Dolton Avenue; therefore, it wouldn't have been a mistake that anybody would have relied on" and "[b]ased on this instance, no one would have been misled ***. In fact, this mistake would not have also affected a substantial right of ownership." The court held that "it certainly does not rise to the level of a sale in error that was contemplated by the legislature." For the reasons set forth below, we affirm.

¶ 3                                 ANALYSIS

¶ 4      On appeal, Eeservices contends that the Cook County Assessor erroneously described the subject property and the trial court improperly applied the plain language of section 21-310(a)(5) of the Code in refusing to declare a sale in error. Petitioner's argument raises an issue of statutory interpretation, which we review *de novo*. *In re Application of the Douglas County Treasurer & ex officio County Collector*, 2014 IL App (4th) 130261, ¶ 24.

¶ 5      In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the language of the statute itself. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 35. A court may not depart from that plain language by reading into the statute exceptions, limitations, or conditions that are not consistent with the expressed legislative intent. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007).

¶ 6      However, a court will not read language in isolation; it will consider it in the context of the entire statute. *Carmichael*, 2018 IL 122793, ¶ 35. The court may also consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.*; *Bowman v. Ottney*, 2015 IL 119000, ¶ 9. We must presume that the legislature did not intend to produce absurd, inconvenient, or unjust results. *Carmichael*, 2018 IL 122793, ¶ 35.

¶ 7      Section 21-310(a)(5) of the Code states, in pertinent part, as follows:

"(a) When, upon application of the county collector, the owner of the certificate of purchase, or a municipality which owns or has owned the property ordered sold, it

appears to the satisfaction of the court which ordered the property sold that any of the following subsections are applicable, the court shall declare the sale to be a sale in error:

\* \* \*

    (5) the assessor, chief county assessment officer, board of review, board of appeals, or other county official has made an error (other than an error of judgment as to the value of any property)[.]" 35 ILCS 200/21-310(a)(5) (West 2018).

¶ 8    Petitioner directs us to the plain language of the statute and two unpublished Rule 23(b) orders from this court in support of his argument that the mistake in this case warrants a declaration that the tax sale was made in error: *In re the Application of County Treasurer & ex officio County Collector*, 2014 IL App (1st) 132442-U, and *In re the Application of County Treasurer & ex officio County Collector*, No. 1-10-1754, slip order at *1 (2011) (unpublished order under Illinois Supreme Court Rule 23). Illinois Supreme Court Rule 23(e)(1) (eff. Apr. 1, 2018) prohibits a party from citing an order entered under subpart (b) except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case. None of these contentions are at issue in this case.

¶ 9    Petitioner would have us read the language of section 21-310(a)(5) in isolation and advocates for a bright line rule allowing a sale in error for *any* error, even one that is inconsequential and has no effect on the tax sale process. However, we agree with respondent that a sound interpretation of section 21-310(a)(5) requires us to consider the entirety of the statute, the purpose of the law, and the consequences of interpreting section 21-310(a)(5) one way or another, while presuming the legislature did not intend the error provision to yield absurd results.

¶ 10    In construing section 21-310(a)(5) and applying it to this case, we are guided by the entirety of section 21-310 and the purpose of this provision. " 'Sale in error' refers to errors occurring before, or contemporaneously with, the tax sale and forfeiture \*\*\*. In every instance, however, the 'error' in question affects substantial rights of ownership \*\*\*." *In re Application of the County Collector for Judgment of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1979 & Prior Years*, 169 Ill. App. 3d 180, 183 (1988). Subsections (a)(1), (a)(2), (a)(5.5), (a)(6), and (a)(8) require the court to declare a sale in error where (1) a property was not subject to taxation (35 ILCS 200/21-310(a)(1) (West 2018)), (2) a property's taxes were paid before the sale (*id.* § 21-310(a)(2)), (3) the owner tendered timely and full payment but the county collector did not apply the payment to the homestead property (*id.* § 21-310(a)(5.5)), (4) a bankruptcy petition has been filed (*id.* § 21-310(a)(6)), or (5) the taxes are sold despite their due date having been statutorily extended (*id.* § 21-310(a)(8)).

¶ 11    The Code allows for sales in error under these circumstances because a circuit court lacks jurisdiction over property if the taxes have been paid or the property is exempt from taxation. See *In re Application of Cook County Collector for Judgment of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985*, 228 Ill. App. 3d 719, 731 (1991); *In re Application of County Collector*, 48 Ill. App. 3d 572, 583-84 (1977). Similarly, any action taken against a debtor's property while a stay under the Bankruptcy Code (11 U.S.C. § 362(a) (2018)) is in effect is void *ab initio*, as the determination of a bankruptcy court regarding the effect of a stay trumps a determination made by a nonbankruptcy court. See *In re Application of the County Collector for Delinquent Taxes*, 291 Ill. App. 3d 588

(1997); *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 308 Ill. App. 3d 33, 42-45 (1999).

¶ 12    The remaining subsections (a)(3), (a)(4), and (a)(7) require the court to declare a sale in error when there is a double assessment, the description of the property is void for uncertainty, or the property is owned by a government body. 35 ILCS 200/21-310(a)(3), (a)(4), (a)(7) (West 2018). In each of these instances, without a sale in error, the integrity of the tax sale process and the buyer's investment would likely be impinged.

¶ 13    Likewise, subsection (b) allows the owner of a certificate of purchase to petition the court for a sale in error when (1) a bankruptcy petition has been filed, (2) improvements to the property have been destroyed or the property is unfit for occupancy, (3) there is an interest held by the United States which could not be extinguished, or (4) the property contains hazardous material that requires cleanup. *Id.* § 21-310(b). Again, these provisions rectify threats to a buyer's investment.

¶ 14    Ultimately, each provision under section 21-310 protects a buyer from suffering an inadvertent loss. This leads us to the purpose of this section. Section 21-310 of the Code affords relief to a tax buyer from the effect of *caveat emptor* purchases at *void* tax sales. *La Salle National Bank v. Hoffman*, 1 Ill. App. 3d 470, 476 (1971) (discussing section of Illinois Revised Statutes that preceded the current section of the Code); *In re Application of the County Collector*, 2017 IL App (2d) 160483, ¶ 49. "Without the right of refund given by [this section], the taxbuyer, caught by the failure of the County officers to delete from the delinquent list properties exempt or on which the tax was already paid or doubly assessed or badly described, would suffer the loss of his entire investment." *La Salle National Bank*, 1 Ill. App. 3d at 476.

¶ 15    In this case, the county's mistake does not threaten petitioner's investment or void the tax sale. Likewise, the assessor's mistake seemingly has nothing to do with the tax sale process at all. In reading the Code as a whole and its tax sales provisions more particularly, we can find nothing that requires the assessor to maintain a website with legal property descriptions for the purpose of the tax sale process.

¶ 16    The Code requires the assessor to publish an assessment list in each year of a general assessment in a newspaper with proper legal descriptions of the properties (35 ILCS 200/12-25 (West 2018)); however,

> "Publication of the assessment roll is clearly not for the guidance of officers or the maintenance of order, system and dispatch in proceedings. It is to provide the taxpayer first, with notice of value of his property for tax purposes as determined by the proper authority and, second, information and opportunity to ascertain whether the assessment is excessive or disproportionate." *People ex rel. Republican-Reporter Corp. v. Holmes*, 98 Ill. App. 2d 11, 16-17 (1968).

Additionally, sections 21-190 through 21-255 of the Code, which govern annual tax sale procedures, make no mention of the assessor's responsibility when it comes to maintaining legal property descriptions on its website. It stands to reason then that there cannot be an error in the tax sale process where the description of the property on the assessor's website is not part of that process.

¶ 17    Reading the county error provision as broadly as Eeservices proposes would frustrate the purpose of the statute and yield absurd results. Certainly the legislature did not intend for tax buyers to use subsection (a)(5) as a loophole to request a sale in error whether or not a county

mistake implicates the tax sale process or has any rational relationship to the buyer's investment.

¶ 18                                    CONCLUSION

¶ 19        For the foregoing reasons, the Cook County Assessor's scrivener's error does not amount to an error in the tax sale under section 21-310 of the Code.

¶ 20        Affirmed.