2022 IL App (4th) 190904

NOS. 4-19-0904, 4-19-0905, 4-19-0906 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF GREENE COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2014 | ) ) ) ) ) ) | Appeal from the Circuit Court of Greene County. Nos. 18-TX4 18-TX5 18-TX7 |
| (Scott Sieron, Petitioner-Appellant, v. The Greene County Treasurer, Respondent-Appellee). | ) ) ) ) ) | Honorable James W. Day, Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. BACKGROUND

¶ 2        This is an appeal from the trial court's denial of three petitions to vacate tax sales and denial of motions to declare them as sales in error under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2018)). Petitioner, Scott Sieron, has been engaged in the business of purchasing properties at county tax sales for 30 years. In November 2015, Raven Securities (Raven), the corporate entity through which petitioner buys property at tax sales, purchased and obtained tax sale certificates for the three parcels of property that are the subject of this consolidated appeal: Greene County case Nos. 18-TX-4 (4-19-0904) (Certificate No. 201400100), 18-TX-5 (4-19-0905) (Certificate No. 201400145), and 18-TX-7 (4-19-0906)

(Certificate No. 201400170). Each of the properties was sold by the Greene County treasurer to Raven for delinquent 2014 real estate taxes. In each case, Sieron filed and executed the proper notices to the property owners, notifying them that the property had been sold for delinquent taxes. As required, the notices informed the previous owners of the period for "redemption"—or when they could pay delinquent taxes and penalties and thereby retain their property—and advised them of the amounts owed to redeem the property. The notices further informed the previous owners that a petition for tax deed transferring title and possession of the property would be filed if the property was not redeemed by the expiration date of the redemption period. Two extensions of the redemption period were filed, ultimately extending the period of redemption to August 2018.

¶ 3        Raven assigned its interest in the properties to Sieron and filed copies of the assignments along with the relevant tax sale certificates in March 2018. Sieron filed petitions for tax deeds in April 2018, indicating that the end-date for the period for redemption was approaching and redemption had not yet occurred and seeking tax deeds and possession of the properties. An "Application for An Order Directing Issuance of a Tax Deed," along with a "Report of Proceedings and Affidavit in Support of Petition for Tax Deed" was filed in each case on August 7, 2018, four days after the redemption period expired. In his affidavit, Sieron represented that he "visited, or caused to be visited" the properties, provided photographs, found them to be in either "fair" or "poor" condition, and continued to seek tax deeds and orders of possession as to each property. An "Order Directing Issuance of Tax Deed" was entered as to each parcel on August 9, 2018, conveying the properties to Sieron and entitling him to possession immediately. (Since the claims regarding each parcel are identical, we need not

reference them individually, either by their tax certificate or permanent index number.) An "Order of Possession" was entered on the same date; however, no tax deeds were ever sought.

¶ 4            In June and July 2019, Sieron filed motions under section 21-310(b)(2) of the Property Tax Code (35 ILCS 200/21-310(b)(2) (West 2018)), seeking a declaration of sale in error and refunds in all three cases. In case No. 18-TX-4, Sieron sought an order in June 2019, declaring the sale in error and directing a refund of monies paid to the county treasurer, plus statutory interest, for tax sale certificates issued for 2014 and 2015 delinquent taxes. Echoing the language of the statute, Sieron based his claim on the fact that "no tax deed had been issued" and that "improvements upon the property sold have been substantially destroyed, or rendered uninhabitable or otherwise unfit for occupancy, subsequent to the tax sale and prior to issuance of a tax deed." Both documentary and photographic exhibits were attached. The Greene County State's Attorney's Office filed a response on July 11, 2019, objecting to Sieron's motion and request for refund. The next day, Sieron filed a "Motion for Declaration of Sale in Error and for Refund Pursuant to Bankruptcy" under subsection 310(b)(1) of the Property Tax Code (35 ILCS 200/21-310(b)(1) (West 2018)) for the same parcel identified in case No. 18-TX-4, alleging an intervening bankruptcy petition filed by the former property owner "subsequent to the tax sale and prior to the issuance of the tax deed."

¶ 5            In case No. 18-TX-5, Sieron filed a motion pursuant to section 21-310(b)(2) (35 ILCS 200/21-310(b)(2) (West 2018)) for a "Declaration of Sale in Error and For Refund" in two counts, alleging "no tax deed has been issued" and "[t]he improvements upon the property sold have been substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy, subsequent to the tax sale [for delinquent 2014 (or delinquent 2015) taxes] and prior to the issuance of the tax deed." Again, he sought an order declaring the sale to be in error, and a

refund to Sieron of the amounts paid at the tax sale, plus all costs. Count I related to a tax sale certificate for delinquent 2014 taxes and count II was for delinquent 2015 taxes.

¶ 6 A substantially similar two-count motion was filed in case No. 18-TX-7 for tax sale certificates issued for delinquent 2014 and 2017 taxes.

¶ 7 The state's attorney's responses to the motions for sale in error contended they were untimely, since Sieron had been granted an "Order Directing Issuance of the Tax Deed" and an "Order for Possession" in August 2018. At the outset of the July 12, 2019, hearing on all three motions, when asked whether he wished to present live testimony, Sieron's counsel said the parties agreed to stipulate to the admission of the various exhibits accompanying the petitions and that "the exhibits pretty much show what we're doing on these." The state's attorney contended that the property passed to Sieron upon the issuance of the orders and that he had 30 days to seek to undo those orders. He also argued that the actual recording of a tax deed was irrelevant to the issue of how long Sieron waited to obtain it.

¶ 8 Sieron's counsel argued since the statute granted them a year in which to obtain the tax deed before losing all interest in the property, the 10-month delay in this case was also irrelevant. He contended that the evidence presented was sufficient to show the property had deteriorated since the time of sale to a degree sufficient to justify a sale in error. Combining oral proffers and questions put to Sieron while not under oath, Sieron and his counsel described the process involved in examining and assessing the condition of the properties, including enlisting the assistance of the county treasurer to market them, which efforts proved to be unsuccessful. Sieron argued that the legislative intent of the tax sale statutes is to "encourage tax buyers to participate in this proceeding" in order to attempt to retain properties on the tax rolls, and the sale in error statutes were designed to "give them an out if for some reason the property is not what

- 4 -

they thought it was when they purchased it." He noted that, unlike normal buyers of property, a tax lien buyer has no right to inspect the properties until given that right by the court. "We're buying a pig in a poke," he said.

¶ 9    The trial court, during its oral pronouncement, asked Sieron's counsel about the statute's language permitting the tax lien buyer a year to obtain a tax deed. In response, counsel (referencing section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2018))) noted that unless they act within one year and record the tax deed, they lose all interest in the property.

¶ 10    The statute to which he referred, section 22-85, is titled "Failure to timely take out and record deed; deed is void." 35 ILCS 200/22-85 (West 2018). It says, in relevant part:

> "Unless the holder of the certificate purchased at any tax sale under this Code takes out the deed in the time provided by law, and records the same within one year from and after the time for redemption expires, the certificate or deed, and the sale on which it is based, shall, after the expiration of the one year period, be absolutely void with no right to reimbursement." 35 ILCS 200/22-85 (West 2018).

The trial court reasoned that the buyer was entitled to a tax deed "some 10 months ago" and had probably obtained an order of possession (which is reflected in the record), concluding:

> "So, I think to say that it's all right for the purchaser to wait for seven or eight months and then say the property deteriorated is contrary to the intent. He could have had a tax deed the day after it was issued. If he didn't bother to get the tax deed I don't think it's appropriate to say he can wait eight or 10 months and then say,

'Well, the property has deteriorated. I don't have a tax deed.'

That's his fault he doesn't have it. I am going to deny these

motions for sale in error."

The trial court asked the State to prepare a written order.

¶ 11    The record reveals there was a further hearing on August 29, 2019, apparently to address Sieron's motion based on a bankruptcy filed by the property owner of the parcel in case No. 18-TX-4. Instead, Sieron reargued the issues raised and addressed previously at the July hearing and briefly discussed the bankruptcy.

¶ 12    Two orders were prepared and filed on September 16, 2019. One addressed the motions for sale in error filed June 21, 2019, which had been discussed at the July hearing. The other related to motions filed July 12, 2019, under section 21-310(b)(1), based on the bankruptcy filing. The bankruptcy motions were never discussed at the July hearing and discussed only briefly at the hearing in August. The order denying the June motions found the exhibits stipulated into evidence failed to establish proof of substantial destruction, as referenced in section 21-310, or that the destruction occurred after the sale but before the tax deed "could have been issued," noting Sieron's delay in seeking issuance of a deed. Relying on the language of *Wagner v. Rumler*, 177 Ill. App. 3d 301, 532 N.E.2d 480 (1988), the trial court found it was Sieron's burden to establish "substantial destruction" after the sale and "prior to the time that the tax deed could have been issued."

¶ 13    Regarding the July motions based on an intervening bankruptcy, section 21-310(b)(1) permits the trial court to declare a sale in error if "[a] voluntary *** petition under the provisions of 11 U.S.C. Chapter 7, 11, 12, or 13 has been filed subsequent to the tax sale and prior to the issuance of the tax deed." 35 ILCS 200/21-310(b)(1) (West 2018). Here, the court

- 6 -

found the stipulated exhibits failed to identify either the person or the property in such a manner as to conclude it related to the tax sale properties and it found the bankruptcy was filed before the tax sale occurred.

¶ 14        Sieron filed a motion to reconsider in October 2019, alleging (1) "newly obtained" evidence in the form of affidavits of Robert Gould, who identified himself as "an independent contractor" who "regularly perform[s] services for Raven *** and Scott Sieron," submitted to explain the various photographs that had been admitted at the July hearing; (2) he had one year from the date of the order for issuance of the tax deed (August 9, 2018) to obtain and record it, and his motions for sale in error were timely filed in June 2019; (3) the trial court was provided sufficient evidence to establish the property had been substantially destroyed as defined in the statute subsequent to the tax sale and prior to issuance of the tax deed; and (4) the trial court improperly relied on language in *Rumler* indicating the destruction needed to be shown to have occurred prior to the time a tax deed *could have* been issued.

¶ 15        Sieron's motion also included a discussion of the process involved in the business of purchasing property at tax sales and representations, never previously made a part of the record, about conversations with the property owner about redemption, which did not come to pass.

¶ 16        At the hearing on the motion in November 2019, Sieron argued, "[T]he issuance of an order for a tax deed operates merely as a lien," and if it is established the property has been "substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy" "subsequent to the tax sale and prior to issuance of the tax deed," having met all other statutory requirements, Sieron was entitled to a sale in error. The State argued that the order granting him the tax deed and the right of possession required Sieron to act in a timely manner and delaying

for 11 months before claiming "substantial destruction" was unreasonable. It was the State's position that upon issuance of the order granting him the right to obtain a tax deed, Sieron became the owner of the property, and his failure to record the deed for 11 months did not prevent his ownership interest from vesting. Sieron's counsel noted that the procedure is governed by statute and the time limits are contained therein.

¶ 17 The trial court declined to alter its earlier ruling, concluding that the evidence Sieron chose to present at the previous hearing was not sufficient to justify declaring the sales to be in error. The trial court granted Sieron's request for an Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016) finding, and Sieron filed a timely notice of appeal.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 Simplified somewhat, on appeal Sieron claims four errors by the trial court: (1) the trial court misinterpreted section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2018)) when it denied Sieron's motions for sale in error, based on a timeliness component it read into the statute; (2) the trial court erred by entering a written order, which contradicted its oral pronouncement; (3) the trial court erred by finding there was insufficient evidence of "substantial destruction" between the time of the tax sale and when Sieron "could have" obtained a tax deed; and (4) the trial court erred in its application of the holding in *Rumler* to the facts of this case and in finding Sieron had not adequately established when the substantial destruction occurred.

¶ 21 A. Standard of Review

¶ 22 The parties agree that, to the extent we are called upon to interpret provisions of the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2018)), our review is *de novo*. See

*Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18, 990 N.E.2d 1144 (statutory interpretation is a question of law that we review *de novo*). "A *de novo* review is a review without any deference to the trial court's decision." *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 17, 983 N.E.2d 1124. If, however, an appeal "requires us to scrutinize the trial court's findings of fact, we will do so deferentially, upholding those findings of fact unless they are against the manifest weight of the evidence." *Shulte*, 2013 IL App (4th) 120132, ¶ 19. Where, as here, the trial court was required to make findings of fact about the sufficiency of the evidence of "substantial destruction," those findings will not be disturbed unless they are against the manifest weight of the evidence.

¶ 23        Regarding questions of statutory construction, we are asked to determine and give effect to the intent of the legislature, recognizing that it can best be done by looking at the language of the statute, given its plain and ordinary meaning. *Hamer*, 2013 IL 114234, ¶ 18. "It is improper for a court to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent." *Hamer*, 2013 IL 114234, ¶ 18 (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479, 639 N.E.2d 1282, 1287 (1994)). Although both parties ask us to interpret the meaning of section 21-310, relating to sales in error, as we have said previously, even where we may believe it a matter of apparent legislative oversight, we will not endeavor to correct that oversight " 'by rewriting a statute in a manner inconsistent with its clear and unambiguous language.' " *In re Application of the County Treasurer & ex officio County Collector*, 2017 IL App (4th) 170003, ¶ 28, 83 N.E.3d 1203 (quoting *In re Marriage of Murphy*, 203 Ill. 2d 212, 219, 786 N.E.2d 132, 136 (2003)).

¶ 24                     B. Section 21-310 and Sales in Error

¶ 25          A sale in error is a statutory creation found in section 21-310 of the Property Tax Code (35 ILCS 200/21-310 (West 2018)). *In re Application of the County Treasurer & ex officio County Collector of Warren County*, 2017 IL App (3d) 160396, ¶ 8, 92 N.E.3d 921 (hereinafter *Tate*).“ ‘ “Sale in error” refers to errors occurring before, or contemporaneously with, the tax sale and forfeiture ***.’ ” *In re Application of the County Treasurer & ex officio County Collector*, 2020 IL App (1st) 190014, ¶ 10, 161 N.E.3d 283 (hereinafter *Eeservices, Inc.*) (quoting *In re Application of the County Collector for Judgment of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1979 & Prior Years*, 169 Ill. App. 3d 180, 183, 523 N.E.2d 617, 619 (1988)). “ ‘The claimant seeking a sale in error is generally asking the circuit court to undo the sale of a specific parcel’s taxes for an enumerated reason.’ ” *Tate*, 2017 IL App (3d) 160396, ¶ 8 (quoting *Bueker v. Madison County*, 2016 IL App (5th) 150282, ¶ 50, 61 N.E.3d 237). Section 21-310 “ ‘delineates who may apply for a sale in error, where and on what grounds the application must be made, when these grounds must occur, and the county collector’s responsibilities in the event a sale in error is declared by the court.’ ” *Tate*, 2017 IL App (3d) 160396, ¶ 8 (quoting *In re Petition for Declaration of Sale in Error*, 256 Ill. App. 3d 159, 162, 628 N.E.2d 1182, 1185 (1994)).

¶ 26         Section 21-310(b)(2) of the Property Tax Code provides, in relevant part:

      “When, upon application of the owner of the certificate of

      purchase only, it appears to the satisfaction of the court which

      ordered the property sold that any of the following subsections are

      applicable, the court shall declare the sale to be a sale in error:

           ***

(2) The improvements upon the property sold have been substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy subsequent to the tax sale and prior to the issuance of the tax deed ***." 35 ILCS 200/21-310(b)(2) (West 2018).

¶ 27    Section 21-310 of the Property Tax Code "affords relief to a tax buyer from the effect of *caveat emptor* purchases at *void* tax sales." (Emphasis in original.) *Eeservices, Inc.*, 2020 IL App (1st) 190014, ¶ 14. Ideally, "each provision under section 21-310 protects a buyer from suffering an inadvertent loss." *Eeservices, Inc.*, 2020 IL App (1st) 190014, ¶ 14. The *Eeservices, Inc.* court explained: " 'Without the right of refund given by [this section], the taxbuyer, caught by the failure of the County officers to delete from the delinquent list properties exempt or on which the tax was already paid or doubly assessed or badly described, would suffer the loss of his entire investment.' " *Eeservices Inc.*, 2020 IL App (1st) 190014, ¶ 14 (quoting *La Salle National Bank v. Hoffman*, 1 Ill. App. 3d 470, 476, 274 N.E.2d 640, 645 (1971)).

¶ 28    Here, Sieron sought declarations of sales in error on two bases: (1) that improvements upon the property sold have been substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy subsequent to the tax sale and prior to the issuance of the tax deed (see section 21-310(b)(2) of the Property Tax Code (35 ILCS 200/21-310(b)(2) (West 2018))) and (2) as to one of the parcels, that a voluntary petition under the provisions of chapters 7, 11, 12, or 13 of the Bankruptcy Act (11 U.S.C. § 101 *et seq.* (2018)) has been filed subsequent to the tax sale and prior to the issuance of the tax deed (see section 21-310(b)(1) of the Property Tax Code (35 ILCS 200/21-310(b)(1) (West 2018))). The State's objection and the trial court's reason for denying Sieron's motions for declaration of sales in

error were founded on their interpretation of the language of section 21-310(b)(2) for sales in error based on substantial destruction "subsequent to the tax sale and prior to the issuance of the tax deed." See 35 ILCS 200/21-310(b)(2) (West 2018). They concluded that the language meant Sieron was required to establish "substantial destruction" after the sale and "prior to the time that the tax deed *could* have been issued." (Emphasis added.) According to the trial court, this could have been as soon as the day after the order was entered. The court's reasoning came from language found in *Rumler*.

¶ 29          In *Rumler*, the Third District interpreted section 260 of the Revenue Act (Ill. Rev. Stat. 1983, ch. 120, ¶ 741) (a predecessor to section 21-310(b)(2) of the Property Tax Code (35 ILCS 200/21-310(b)(2) (West 2018))), which allowed for claims for a sale in error " 'upon application of the tax purchaser that the improvements upon property sold have been substantially destroyed subsequent to the tax sale and prior to the issuance of the tax deed.' " *Rumler*, 177 Ill. App. 3d at 303-04 (quoting Ill. Rev. Stat. 1983, ch. 120, ¶ 741). The *Rumler* court found that to mean "[the] plaintiff must present evidence that the destruction of the property occurred between the date of the tax sale and the date when a tax deed *could have* been issued at the end of the redemption period." (Emphasis added.) *Rumler*, 177 Ill. App. 3d at 304. It is notable that *Rumler* has not been cited for this proposition in any other case. A careful reading of *Rumler* reveals that the reviewing court's finding was driven by the particular facts of the case and the lack of record before it. The plaintiff testified to substantial destruction of the property after the tax sale, although he conducted no examination of the properties beforehand beyond an examination of the information contained on the property assessment cards. *Rumler*, 177 Ill. App. 3d at 303. The appellate court, with no transcript of the proceedings, was left to determine whether the trial court correctly found substantial destruction "subsequent to tax sale

but prior to issuance of the tax deed" based on a bystander's report. *Rumler*, 177 Ill. App. 3d at 303. Although there was evidence of substantial destruction after the tax sale, the report of proceedings "is void of any indication as to whether these improvements were destroyed prior to the issuance of the deed." *Rumler*, 177 Ill. App. 3d at 304. The court reasoned that, under a manifest weight of the evidence standard, regardless of whether the plaintiff has actually obtained a tax deed, it was the plaintiff's burden to show there had been substantial destruction of the properties in question "between the date of the tax sale and the date when a tax deed could have been issued at the end of the redemption period." *Rumler*, 177 Ill. App. 3d at 304. "Our reasoning is that if the improvements on each parcel were not substantially destroyed prior to the issuance of a tax deed, then there is no good reason why the tax certificate holder should not have sought a tax deed." *Rumler*, 177 Ill. App. 3d at 304. This, it said, was because at the time a tax deed issues, the tax purchaser becomes the record titleholder of the property and can insure against loss; but prior thereto, a tax certificate holder may not have such an insurable interest. *Rumler*, 177 Ill. App. 3d at 304. With no evidence in the record to show when substantial destruction may have taken place during the time prior to when the deed could have been issued, the reviewing court reversed the trial court's finding as against the manifest weight of the evidence. *Rumler*, 177 Ill. App. 3d at 304. Without an adequate record, the reviewing court was left to surmise when, and under what circumstances, the tax purchaser might obtain a deed. Looking at the transaction through the lens of a normal real estate purchase, the reviewing court reasoned a tax purchaser would obtain a tax deed as soon as possible to be able to insure it against damage. *Rumler*, 177 Ill. App. 3d at 304. But we are not dealing with a normal real estate transaction here. Instead, we are addressing the business of purchasing tax certificates.

¶ 30　　　　　　On appeal, the State ignores its singular objection to the sale in error before the trial court—the delay in seeking a tax deed—and the trial court's clear reliance on that objection to deny the motion when ruling from the bench. Instead, it now argues a lack of sufficient evidence of "substantial destruction" after the tax sale and before the time a tax deed "could have" been obtained. But is this what is required by subsection 310(b)(2)? No.

¶ 31　　　　　　Sieron's motivation to delay obtaining a tax deed is clear from the record. For better or worse, it is built into the process of wholesale purchases of tax certificates and is dictated by the Property Tax Code as it is currently written. Sieron elects not to pursue a tax deed until he determines that (1) he can get the property owner to enter into an installment agreement with him to redeem the property for the amount of taxes owed plus statutory penalties; (2) he can get the county to pay for the costs of marketing the property on his behalf, thereby selling it hopefully at a profit; (3) he can obtain a buyer on his own, secure the tax deed, and then sell the property; or (4) if none of the above pan out, he can return the property to the county as a "sale in error," recouping "all costs paid by the owner of the certificate of purchase or his or her assignor which were posted to the tax judgment, sale, redemption and forfeiture record." 35 ILCS 200/21-315(a) (West 2018). To be clear, Sieron's motive is not what he asserted before the trial court and claims here—simply wanting to help keep property on the tax rolls for the benefit of the community. This is a business designed to obtain the highest possible profit from the purchase of low-end properties, at essentially no risk to the tax certificate purchaser. A tax purchaser like Sieron can conduct a cursory inspection before the tax sale and then extend the redemption periods for the maximum allowed by statute before conducting a more thorough inspection later. If unsuccessful in getting the property owner to redeem by paying him or by sale, the tax

- 14 -

purchaser may simply return the property to the county, claiming substantial destruction in the interim, and get his costs back.

¶ 32    Is this prohibited by subsection 310(b)(2) of the Property Tax Code? Unfortunately, the answer to this question, like the one above, is "no." As a matter of statutory construction, we look first to the language of the statute in question. *Hamer*, 2013 IL 114234, ¶ 18. Subsection 310(b)(2) clearly provides that if the owner of the tax certificate (Sieron, in this case) satisfies the court that "[t]he improvements upon the property sold have been substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy subsequent to the tax sale and *prior to the issuance of the tax deed*," and has otherwise complied with all statutory requirements, he is entitled to a sale in error. (Emphasis added.) 35 ILCS 200/21-310(b)(2) (West 2018). The only time limitation placed on a tax sale purchaser relevant to our analysis is found in section 22-85:

> "Unless the holder of the certificate purchased at any tax sale
> under this Code takes out the deed in the time provided by law, and
> records the same within one year from and after the time for
> redemption expires, the certificate or deed, and the sale on which it
> is based, shall, after the expiration of the one year period, be
> absolutely void with no right to reimbursement." 35 ILCS 200/22-
> 85 (West 2018).

Regardless of his motive in doing so, a tax certificate purchaser is under no obligation to obtain the tax deed ordered by the trial court, nor is he so obligated to record it at any time short of one year after the period of redemption expires. Aside from the language found in *Rumler*, which we

find clearly inapposite, we are not aware of any similar case supporting the trial court's interpretation here.

¶ 33          The error in the reasoning of both the State and the trial court rests primarily on their belief the trial court's order allowing the clerk to issue a tax deed pursuant to section 22-40 (35 ILCS 200/22-40 (West 2018)) invested Sieron with an ownership interest in the properties. Based on the language of the statute, once the petitioner has shown compliance with all statutory prerequisites "entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed." 35 ILCS 200/22-40(a) (West 2018). Both the State and the trial court reasoned that the court's order had the effect of transferring sufficient interest in the property to the tax purchaser as to warrant immediate or timely issuance of a tax deed. Such is not the case. "[T]he tax sale certificate is personal property, a form of negotiable instrument, which represents a lien on the property in favor of the tax buyer and the tax buyer's right to enforce the lien and institute tax deed proceedings after the redemption period expires." *In re Application of the County Treasurer of Cook County, Illinois, for the Judgment & Sale of Real Estate for General Taxes for the Year 1980*, 185 Ill. App. 3d 701, 703, 542 N.E.2d 15, 16 (1989). In *In re Application of the County Treasurer & ex officio County Collector*, 373 Ill. App. 3d 679, 685, 869 N.E.2d 1065, 1074 (2007) (hereinafter *AAM/US Bank*), the Second District concluded that the language of the statute suggested "the order itself does not amount to the issuance of [a tax] deed, but that steps must be taken before the deed is issued." As a result, it reasoned, since the county clerk issues the tax deed, "the plain language of the above statutes provides that title is acquired at the time the county clerk issues the tax deed, and not at the time the order for issuance of the tax deed is entered." *AAM/US Bank*, 373 Ill.

App. 3d at 685. The Second District found " '[a] certificate of sale does not pass title to the purchaser until the passing of the redemption period *and* the issuance of a tax deed.' " (Emphasis in original.) *AAM/US Bank*, 373 Ill. App. 3d at 686 (quoting *Illinois Ry. Museum, Inc. v. Siegel*, 132 Ill. App. 2d 77, 82, 266 N.E.2d 724, 727 (1971)). "[O]ur supreme court recognized that a conveyance is an essential part of vesting title, even when a court has authorized the sale." *AAM/US Bank*, 373 Ill. App. 3d at 686 (citing *Atkins v. Hinman*, 7 Ill. 437, 448 (1845)). Commenting on the trial court's observation, just like here, that a tax purchaser could obtain the tax deed on the day the order for issuance was entered, the court held, "we do not believe that the mere ability to acquire the tax deed endows the tax deed purchaser with the obligations and liabilities of a titleholder." *AAM/US Bank*, 373 Ill. App. 3d at 686. Addressing Illinois tax purchasers' claims within the context of a bankruptcy proceeding in *In re McKinney*, 341 B.R. 892, 896-97 (Bankr. C.D. Ill. 2006), the United States Bankruptcy Court for the Central District of Illinois found that

> "[a] tax sale, by itself, conveys no present rights to the buyer and takes no present rights from the homeowner. What a tax buyer acquires is a contingent right to possibly acquire title in the future, which right is not a real property interest. The tax buyer's right is represented by the tax sale certificate, which is personal property in the form of a negotiable instrument."

The bankruptcy court went on to note that the debtor's interest in the real property is subject to divestment only upon his failure to redeem, coupled with the tax purchaser's compliance with all statutory requirements and issuance of a tax deed.

> "It is the tax deed alone that conveys title to the property and gives the tax deed grantee the right to possession. [Citation.] Until the tax deed is issued, title, the

right to possession and all other incidents of ownership remain with the debtor. Moreover, unless the tax buyer obtains and records the tax deed within one year after the time for redemption expires, his rights become 'absolutely void.' [Citation.]" *McKinney*, 341 B.R. at 897-98.

¶ 34     As a result, contrary to the trial court's finding, no rights of ownership pass to the tax certificate purchaser until he/she actually obtains a tax deed, and the only time constraint placed on a tax sale purchaser is the one year after the right of redemption expires in which to either obtain the tax deed or forfeit all interest in the property pursuant to section 22-85. There is no other "timeliness" requirement to be read into section 21-310(b)(2).

¶ 35     C. Evidence of "Substantial Destruction"

¶ 36     From our review of the record, we find the State did not object and the trial court made no reference to the nature or extent of evidence presented in support of Sieron's claims of substantial destruction at the July 2019 hearing on his motions for sale in error. Both relied instead on the delay in obtaining and filing a tax deed in the intervening months before seeking sales in error. When Sieron's counsel referenced the photographic evidence tendered in support of his motion, he noted the State's agreement to stipulate to its admissibility. In fact, when asked, the State made it clear that the issue was entirely separate from whether or when the property had been inspected. The State argued:

> "And you issued the order for—to grant the tax deed and they
> asked to take possession of it and that was back in August of last
> year. At that point in time, it's my belief that they have—it's their
> property at that point. The actual recording of the deed is more to
> put the rest of the community on notice that Mr. Sieron has rights

to that property. *** When you signed the order, it's his house *** . *** [T]hat would be our objection to this Your Honor, that it's his house. We're outside the30 days where he could have taken that back. The fact that he didn't record it, um, right now, or hasn't recorded the tax deed yet with the clerk's office, is—doesn't change things."

¶ 37 Sieron's counsel sought to persuade the trial court that the statute in question allowed him one year from entry of the order to record the deed, noting that, up to that point, Sieron had purchased only the county's tax lien on the property as evidenced by the tax sale certificate.

¶ 38 After hearing the arguments of counsel, the trial court explained its ruling as follows:

"The court basically ordered issuance of the tax deed some 10 months ago. Buyer was entitled to that tax deed on that date. There was probably an order for possession issued on that date back in 2018.

[Which Sieron's counsel acknowledged.]

So I think to say that it's all right for the purchaser to wait for seven or eight months and then say the property deteriorated is contrary to the intent. He could have had a tax deed the day after it was issued. If he didn't bother to get the tax deed I don't think it's appropriate to say he can wait eight or 10 months and then say, 'Well, the property has deteriorated. I don't have a tax deed.'

> That's his fault he doesn't have it. I am going to deny these
>
> motions for sale in error."

¶ 39　　The trial court made no finding regarding the evidence of "substantial destruction" or when it may have occurred and directed the State to prepare a written order. It does not appear that any order was prepared until after a hearing in August 2019, relative to the property alleged to be part of ongoing bankruptcy proceedings (and therefore subject to a sale in error under section 310(b)(1)). At that time, Sieron claimed the intervening bankruptcy by the property owner entitled him to a sale in error. Again, the State argued the failure to obtain and record a tax deed as the basis for denying a sale in error, and the state's attorney noted this was his argument as to each property, regardless of the basis for the motion for sale in error. Neither party mentioned the evidence of the extent of damage done to the properties presented at the hearing in July 2019, or when it may have occurred, and the trial court made no such reference in its discussion with counsel before taking the matter under advisement.

¶ 40　　The trial court then entered two written orders in September 2019, one addressing the motions under section 21-310(b)(2) ("substantially destroyed") and the other relating to the intervening bankruptcy under section 21-310(b)(1). The trial court identified the two primary components to motions for sale in error under section 21-310(b)(2): (1) substantial destruction (2) prior to the issuance of the tax deed. The trial court based its denial of the motions for sales in error on

> "the petitioner present[ing] no testimony[,] only a group of mostly
>
> unidentified photographs which were attached to the petition for
>
> sale in error. The photos show some need for repair but the court
>
> finds no evidence sufficient to establish the improvements on the

- 20 -

property were substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy. [(noting 'exhibit 6,' a photo dated April 25, 2018, said 'the building is in fair condition')]."

¶ 41 The trial court concluded that since a tax deed *could have* been issued on August 9, 2018, the fact that Sieron took no action to obtain and record the deed before filing motions for sale in error on June 21, 2019, precluded it from granting his motions, since "there was no proof of substantial destruction of the improvements prior to the time the tax deed could have been issued." As Sieron aptly argues on appeal, this is a significant shift from the sole reason given for denying the motion when ruling from the bench at the July 2019 hearing. Sieron contends we should give greater consideration to the trial court's oral pronouncement, relying primarily on two criminal cases involving inconsistencies between a written sentencing order and the court's oral pronouncement of sentence. See *People v. Tackett*, 130 Ill. App. 3d 347, 474 N.E.2d 451 (1985); *People v. Smith*, 242 Ill. App. 3d 399, 609 N.E.2d 1004 (1993). Within the context of criminal sentencing, that would normally hold true since a trial court's oral pronouncement of sentence controls. See *People v. Smith*, 2014 IL App (4th) 121118, ¶ 19, 18 N.E.3d 912. However, this is not a situation where the rulings are inconsistent. The trial court denied the sale in error in both instances and did so on somewhat different grounds, but both were flawed in their connection to when a tax deed *could have issued*. As we have discussed above, there is no such requirement in section 310(b)(2), and we will not read one into it. See *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117, 866 N.E.2d 227, 235 (2007) (a court may not depart from that plain language by reading into the statute exceptions, limitations, or conditions that are not consistent with the expressed legislative intent).

¶ 42    Sieron is correct in arguing that neither the State nor the trial court questioned the sufficiency of the photographic evidence when it was presented at the July 2019 hearing. In fact, both the State and the court expressed little interest in the condition of the property, focusing instead on the timeliness of pursuing the motions for sale in error in relation to when the order for issuance of a tax deed and order for possession were entered on August 9, 2018—when a tax deed could have been issued. In the written orders, however, the trial court made express findings of fact from its review of the photographs, concluding, "the court finds no evidence sufficient to establish that the improvements on the property were substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy." As a factual finding by the trial court, we review it deferentially, upholding those findings unless they are against the manifest weight of the evidence. *Shulte*, 2013 IL App (4th) 120132, ¶ 19. "A ruling is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 47, 44 N.E.3d 1144. Photographs attached as exhibits to the motion for declaration of sale in error in case No. 18-TX-4 begin with a photograph taken on or about March 21, 2016 (Exhibit D), noting the property to be in "fair to poor condition." This would have been after the tax sale on November 17, 2015, but before the order for issuance of a tax deed and order for possession entered on August 9, 2018.

¶ 43    The exhibit referenced by the trial court in its written order (Exhibit 6), which it used to support its finding that "the photos show some need for repair" but "no evidence sufficient to establish that the improvements on the property were substantially destroyed or rendered uninhabitable or otherwise unfit for occupancy," was taken by an independent process server on April 25, 2018, almost four months before the order for issuance of a tax deed. The process server noted, "[t]he building is in fair condition." However, the process server was not

the "in-house reviewer" tasked with inspecting the property but was merely documenting service by posting a notice on the front door. Sieron's Exhibit D notes that the process server "did not review the rear of the building" and his photos, to which the State stipulated admission, taken only three days later on or about April 28, 2017, show the property "was noted as in poor condition, and appears to be vacant," "dilapidated, with the connection from the garage to the 2nd story having collapsed." Windows are noted to be "missing or broken," with plaster "falling off the underlying brick walls." By September 17, 2018, over 30 days after entry of the order, the property is described as in "very poor condition," with "plaster *** cracking and peeling off the underlying brick," and "[i]t appears the foundation is cracking and pulling away from the walls." In a series of undated photographs following the one identified as having been taken on September 17, 2018, substantial damage to the interior of the building is evident, with walls missing, portions of the ceiling having collapsed, and clear evidence of water and mold damage to the interior.

¶ 44        Similar photographic evidence was attached to the motions for sale in error in case Nos. 18-TX-5 and 18-TX-7, all admitted by stipulation by the State at the July 2019 hearing. Again, the State made it clear its objection was based on what we now see was the faulty assumption that the trial court's order for issuance of a tax deed transferred ownership of the properties to Sieron and that his failure to obtain and record a tax deed as soon as he could precluded his efforts to seek a sale in error. The trial court, even assuming the property had deteriorated in the interim between the tax sale and order for issuance of a tax deed, found, "I don't think it's appropriate to say he can wait eight or 10 months and then say, 'Well, the property has deteriorated. I don't have a tax deed.' That's his fault he doesn't have it." Based upon the photographs stipulated into evidence, after the tax sale but before the August 9, 2018,

order to which the trial court gave such weight, there is credible evidence of substantial damage. The only photograph apparently relied upon by the trial court to conclude otherwise was taken by a process server, from the front of the building only, and did not reveal the substantial damage seen only three days later by the "in-house reviewer." Even accepting the trial court's interpretation of section 310(b)(2) for the sake of argument, evidence that the property had been "substantially destroyed, or rendered uninhabitable or otherwise unfit for occupancy subsequent to the tax sale" and prior to when a tax deed *could have issued*, was present before the court. The same is true for the other two properties as well. Based upon the photographic evidence in the record, we find the trial court's finding to be against the manifest weight of the evidence. *Shulte*, 2013 IL App (4th) 120132, ¶ 19.

¶ 45       Contrary to Sieron's argument on appeal, he was not prevented by the trial court from presenting further evidence or explanation of the photographs in support of his motion; it was simply not considered necessary by either the State or the court at the time of the July 2019 hearing and only became an issue when the written orders were entered in September 2019. Regardless, the trial court committed error by concluding that proof of substantial destruction had to be shown to have occurred "prior to the time that the tax deed could have been issued." There is no such requirement in the statute. In addition, accepting the trial court's interpretation only for the sake of argument, there was uncontested photographic evidence showing proof of substantial destruction even before entry of the order permitting issuance of the tax deed, and the trial court's finding otherwise was against the manifest weight of the evidence.

¶ 46                                III. CONCLUSION

¶ 47       For the reasons set forth above, we find the trial court erred in denying the motions for sales in error under section 21-310(b)(2) of the Property Tax Code in each of the

consolidated cases and remand for further proceedings consistent with this order. Based on our ruling, we need not address the motion for sale in error in case No. 18-TX-4 based on section 21-3210(b)(1) ("intervening bankruptcy"), nor do we need to address Sieron's remaining claims of error.

¶ 48        Reversed and remanded.

**No. 4-19-0904**

| | |
|---|---|
| **Cite as:** | *In re Application of the County Treasurer & ex officio County Collector of Greene County*, 2022 IL App (4th) 190904 |
| **Decision Under Review:** | Appeal from the Circuit Court of Greene County, Nos. 18-TX-4, 18-TX-5, 18-TX-7; the Hon. James W. Day, Judge, presiding. |
| **Attorneys for Appellant:** | Dustin S. Hudson, of Neubauer, Johnston & Hudson, P.C., of Fairview Heights, for appellant. |
| **Attorneys for Appellee:** | Christopher E. Sherer and John M. Gabala, Special Assistant State's Attorneys, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee. |